STEPHEN C. LOWE *vs.* MATT B. JONES, administrator, & another.

Suffolk.   March 22, 23, 1906. — May 17, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Trust.   Executor and Administrator.   Pledge.*

A trust cannot be established against the proceeds of trust property wrongfully disposed of by the trustee, which are in the hands of the administrator of his insolvent estate, unless such proceeds can be identified and traced into some specific fund or property.

---

A trust cannot be declared against the insolvent estate of a deceased person on the ground that the proceeds of trust property wrongfully disposed of by the deceased went into the general assets of his estate and thus increased the amount in the hands of the administrator.

If one holding in trust certain shares of stock wrongfully pledges them to a bank to secure his own debt, and afterwards dies insolvent, the *cestui que trust* cannot compel the administrator of the insolvent estate to use the general assets of the estate to pay in full the debt to the bank to redeem the stock from the pledge, especially where only the trust property is pledged and there is no opportunity to marshal assets in the payment of the debt.

BILL IN EQUITY, filed as amended on November 28, 1905, by Stephen C. Lowe of Boston against the administrator of the estate of Clarence M. Merriam, late of Newton, and the Neponset National Bank of Canton, alleging:

First. That on or about May 8, 1903, the plaintiff authorized Clarence M. Merriam to buy for him fifty shares of the preferred stock of the Boston and Suburban Electric Companies at $87.50 per share on the understanding and arrangement with Merriam that the stock should be held on account of the plaintiff until paid for or ordered to be sold by the plaintiff, and that the plaintiff thereupon paid to Merriam on account of the stock $1,350.

Second. That on or about September 22, 1903, the plaintiff authorized Merriam to buy twenty additional shares of the stock at $79 per share on the same understanding and arrangement as above set forth, and paid Merriam on account thereof the sum of $380.

Third. That on or about February 2, 1904, Merriam represented to the plaintiff that he had purchased for the plaintiff the fifty shares of stock and the twenty shares of stock at the prices and upon the terms and arrangements above set forth, and that the shares of stock were then being held for the plaintiff according to the arrangement and understanding above set forth, and that Merriam then asked the plaintiff for further payments on account thereof, and the plaintiff thereupon paid Merriam on account of the purchases the further sum of $550.

Fourth. That on or about March 17, 1904, Merriam represented to the plaintiff that the shares were still being held for the plaintiff and represented that owing to the condition of the market it was necessary that Merriam should have some further security from the plaintiff on account of the balance of the purchase price, and Merriam requested the plaintiff to give to him

certain shares of the stock of the Butler Mills to be held as security for the obligation of the plaintiff to pay for the stock; that thereupon the plaintiff believing and relying upon the representations of Merriam delivered to Merriam ten shares of stock in the Butler Mills to be held by Merriam as collateral security on account of the balance of the purchase price of the shares then unpaid for.

Fifth. That on or about April 11, 1905, Merriam died intestate, and on or about April 17, 1905, the defendant Jones was appointed administrator of his estate.

Sixth. That the plaintiff is informed and believes that the ten shares of stock in the Butler Mills are now in the hands of the defendant Neponset National Bank, and are held by that defendant under an alleged lien by reason of the same having been deposited with that defendant by Merriam as collateral security for a loan to Merriam of $500, the proceeds of which loan were received by Merriam and form a part of the assets of his estate now in the hands of the defendant Jones, and the plaintiff says that he is ignorant whether or not Merriam ever in fact purchased the fifty shares and the twenty shares of stock on account of the plaintiff according to the arrangement, but that he is informed and believes that if any such stock ever was bought it has since been sold by Merriam and the proceeds thereof form a part of the assets of the estate of Merriam now in the hands of the defendant Jones; that the plaintiff has never received any of the stock and never has given any order to have the same sold, and the plaintiff further says that at no time since the purchases were alleged to have been made has the market value of the suburban stock fallen as low as the unpaid portion of the purchase price thereof, if the purchases were in fact made as represented by Merriam, and that if the stock was so purchased and has been used or sold by Merriam it was without authority and in fraud of the rights of the plaintiff, and that the plaintiff is not indebted to the estate of Merriam, but on the contrary is a creditor thereof.

And the plaintiff further says that the alleged pledge of the shares of the Butler Mills to the Neponset National Bank to secure the indebtedness of Merriam was unauthorized and was in fraud of the plaintiff's rights, and that the shares were obtained

by Merriam from the plaintiff for the sole purpose of being held as collateral security for the payment by the plaintiff of the balance of the purchase price of the suburban stock, and if the suburban stock was in fact bought the plaintiff is entitled to have it delivered to him together with the shares of the Butler Mills upon the payment by the plaintiff of the unpaid balance of the purchase price of the suburban stock, and the plaintiff has offered, and hereby does offer, to the defendant Jones to pay the balance of the purchase price upon receiving the suburban stock and the Butler Mills stock, and that the defendant Jones has refused to deliver the same to the plaintiff, and the plaintiff says that if the suburban stock never was in fact bought then the Butler Mills stock was obtained from him by Merriam upon false and fraudulent representations, and that in any event the alleged use of the stock by undertaking to pledge it as security for the indebtedness of Merriam was in violation of the plaintiff's rights, and was itself a fraud upon the plaintiff, and that as against the estate of Merriam and the defendant Jones the plaintiff is entitled to have the shares of the Butler Mills stock returned to him forthwith.

And the plaintiff further says that he is informed and believes that the defendant Neponset National Bank claims the shares of the Butler Mills as collateral security for the indebtedness of Merriam, and proposes to apply the same to the payment of that indebtedness; and the plaintiff is informed and believes that the defendant Jones has assets of the estate of Merriam more than sufficient to satisfy the indebtedness.

And the plaintiff further says that he is informed and believes that the estate of Merriam has been represented to be insolvent, but that the assets of the estate are sufficient to enable the defendant Jones to pay off the note of Merriam above referred to and to redeem the shares of stock from the lien of the bank.

The prayers of the bill were:

First. That the shares of the Butler Mills may be decreed to be forthwith delivered to the plaintiff.

Second. That if it is determined that the defendant Neponset National Bank is entitled to hold the shares of the Butler Mills as collateral security for the indebtedness of Merriam that then the defendant Jones be ordered and directed forthwith to redeem

the shares of the Butler Mills from any and all liens by applying to the payment of the indebtedness of Merriam to the Neponset National Bank so much of the other assets of the estate in his hands as may be necessary so to redeem such stock, and thereupon to deliver the shares of the Butler Mills to the plaintiff.

Third. That pending a final decree the defendants may be restrained and enjoined from transferring, assigning, disposing of or in any way dealing with the shares in the Butler Mills or any interests which they respectively may have therein.

Fourth. For further relief.

The defendant Jones demurred to the bill.

In the Superior Court the case came on to be heard upon the amended bill and the demurrer of the defendant Jones thereto, before *Richardson,* J., who after hearing the parties overruled the demurrer, and being of opinion that this order so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by the full court, at the request of the defendant Jones, and with the consent of the plaintiff, reported the case for determination by this court.

Under a stipulation agreed to by all the parties, the note of Merriam and the shares of Butler Mills stock referred to in the bill as held by the defendant Neponset National Bank had been taken up on behalf of the plaintiff without prejudice to any rights of the plaintiff to have the estate of Merriam exonerate the stock and pay off the note, and without prejudice to any rights of the defendant Jones or of the estate of Merriam in the premises. The Neponset National Bank accepted service of the subpoena, but on account of the arrangement above stated took no further part in the proceedings.

The contentions of the defendant Jones in support of his demurrer were stated in the report of the judge as follows:

First. That the bill cannot be sustained as a bill to follow the proceeds of trust property, without further allegations pointing out some specific property or fund into which the proceeds of the pledge of the Butler Mills stock to the Neponset National Bank can now be traced, or further allegations that any such specific fund or piece of property can be pointed out and identified.

Second. That in order to entitle the plaintiff to any relief on

the theory of exoneration the bill must allege either, (a) that other property belonging to Merriam was pledged with the bank so as to be applicable as security for the same loan which was secured by the plaintiff's stock, and that the combined security was more than equal to the amount of the loan; or (b) that some specific fund or piece of property in Merriam's estate could be identified as representing the proceeds of the loan in question, or as having been acquired or freed from a lien or charge through the transaction by which the complainant's stock was pledged to the bank.

All other grounds of demurrer were expressly waived by the defendant. If the above contentions of the defendant Jones on both aspects of the bill were sound and the demurrer should have been sustained on those grounds, the bill was to be dismissed, without prejudice to the right of the plaintiff to prove his claim against the estate of Merriam as one of the general creditors; otherwise, the defendant was to answer over, and the case was to stand for trial.

*H. W. Dunn,* (*C. H. Gilmore* with him,) for the defendant Jones.

*H. E. Warner,* for the plaintiff.

KNOWLTON, C. J. The defendant's intestate, one Merriam, held stock of the plaintiff under an arrangement which established a relation of trust between the parties, and made it his duty to continue to hold it until the conditions should change. It is averred in the bill that he sold a part of it and received the proceeds as his own, and pledged the remainder of it to the defendant bank as security for a loan made to him personally. On the facts averred there is nothing to show that the bank did not take the pledged property in good faith, under such circumstances as would enable it to hold it as security for the loan. Indeed, this part of the stock, with Merriam's note which it was pledged to secure, has been taken up by the plaintiff under a stipulation that the redemption should be without prejudice to the rights of any of the parties. There is no doubt of the plaintiff's right to hold this part of the stock as trust property, except as to the claim of the bank under its loan. Were it not for the bank's claim he could redeem it from the defendant, in accordance with the arrangement under which it was originally held.

The present contention as to this stock relates only to that part of its value which is represented by the loan. As to that part the rights of the parties are substantially the same as they are in regard to the other stock which Merriam sold in violation of his trust.

The plaintiff avers that Merriam's estate has been represented insolvent, and he seeks to establish a trust against the general assets of the intestate in the hands of the administrator, in such a way as to obtain the full ·value of the stock to the corresponding diminution of the amount to be divided among the creditors. All the stock that was sold and the interest of the bank in that which was pledged have gone into the hands of holders in good faith for a valuable consideration. The plaintiff therefore cannot obtain it in specie. His only right, if he has any beyond that of the general creditors, is to follow the money received on account of it, and establish his trust against that.

The rule stated in some of the early cases that a trust cannot be enforced against money mingled with other money in a common fund, because money has no ear marks, has been relaxed, and it is now held that if the proceeds of trust property can be traced into a particular fund, the trust may be established and enforced as a charge upon the fund. This principle has often been recognized both in England and America. A leading case on this subject is *In re Hallett's estate*, 13 Ch. D. 696. The opinions in this case have sometimes been understood as carrying the law further in the direction of following proceeds to enforce a trust than it was actually carried. As a consequence, there have been decisions in some of the American States to the effect that, if one's general estate has been enriched by the proceeds of trust property, the trust may be established against the general assets even though the estate is insolvent. See *McLeod v. Evans*, 66 Wis. 401; *Davenport Plow Co.* v. *Lamp*, 80 Iowa, 722; *Myers* v. *Board of Education*, 51 Kans. 87; *Carley* v. *Graves*, 85 Mich. 483, 487. But these cases have all been either expressly overruled or greatly limited and qualified. *Nonotuck Silk Co.* v. *Flanders*, 87 Wis. 237. *Burnham* v. *Barth*, 89 Wis. 362, 366. *Bradley* v. *Chesebrough*, 111 Iowa, 126. *Marquette Fire Commissioners* v. *Wilkinson*, 119 Mich. 655, 670. *Travellers' Ins. Co.* v. *Caldwell*, 59 Kans. 156. *Kansas State Bank* v. *First State*

*Bank*, 62 Kans. 788. In some States it is held that, while it is not enough to show that trust property went into the general assets, it is enough to charge the whole estate with a trust, if it can be shown that the proceeds remain unexpended somewhere in the estate. See *Slater* v. *Oriental Mills*, 18 R. I. 352, 353; *Bradley* v. *Chesebrough*, 111 Iowa, 126; *Hopkins* v. *Burr*, 24 Col. 502; *Pearson* v. *Haydel*, 90 Mo. App. 253, 264; *Lincoln* v. *Morrison*, 64 Neb. 822. But by the great weight of authority, a trust cannot be established against the proceeds of trust property which has been disposed of, unless the proceeds can be identified and traced into some specific fund or property. This is the doctrine of *In re Hallett's estate*, to which we have already referred. In the later case of *In re Hallett*, [1894] 2 Q. B. 237, 244, it was said in the opinion: " There is nothing in our decision in the present case which is in conflict with the decision in *In re Hallett's estate*. In order to follow trust money, there must be specific property capable of being identified, into which the money has been converted, and in that case this doctrine was applied in this way; it was said that, where a trustee pays his own money and also trust money into his banking account, it is the same thing as though he had placed them in a box, and his drawing for his own purposes must be assumed to be out of his own money. That decision in no way qualifies the rule that there must be a specific thing capable of being followed." See also *In re Stenning*, [1895] 2 Ch. 433; *In re Oatway*, [1903] 2 Ch. 356. The rule in Massachusetts has always been held, with considerable strictness, to require the identification of the trust property as passing into some other specific property or fund, as distinguished from the general assets of one's estate. *Howard* v. *Fay*, 138 Mass. 104. *Attorney General* v. *Brigham*, 142 Mass. 248. In *Little* v. *Chadwick*, 151 Mass. 109, this court said: " When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases. The court will go as far as it can in thus tracing and following trust money; but when, as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails. . . . There is nothing to the contrary in *National Bank* v. *Insurance Co.* 104 U. S. 54, 66–71, and in *In re Hallett's estate*, 13 Ch. D.

696, 708–721, which are chiefly relied on by the annuitants. In Wisconsin a majority of the court has declared that it is not necessary to trace the trust fund into any specific property in order to enforce the trust; and that if it can be traced into the estate of the defaulting agent or trustee, this is sufficient. *McLeod* v. *Evans*, 66 Wis. 401, 409. But this seems to us to be stated too broadly." We have already seen that this case in Wisconsin has been overruled.

The great weight of authority both in England and America is in accordance with the rule in *Little* v. *Chadwick*, above stated. *Lebanon Bank's assigned estate*, 166 Penn. St. 622. *Marquette Fire Commissioners* v. *Wilkinson*, 119 Mich. 655, 670. *Hauk* v. *Van Ingen*, 196 Ill. 20, 39. *Ellicott* v. *Kuhl*, 15 Dick. 333. *Ober* v. *Cochran*, 118 Ga. 396. *In re Mulligan*, 116 Fed. Rep. 715, 717, 718. *Burnham* v. *Barth*, 89 Wis. 362. *Northern Dakota Elevator Co.* v. *Clark*, 3 No. Dak. 26, 30. *Cushman* v. *Goodwin*, 95 Maine, 353. *Rockwood* v. *School District*, 70 N. H. 388. *Peters* v. *Bain*, 133 U. S. 670, 678, 693. *Frelinghuysen* v. *Nugent*, 36 Fed. Rep. 229, 239. *Holmes* v. *Gilman*, 138 N. Y. 369, 376. *In re Hicks*, 170 N. Y. 195, 198, and English cases above cited.

All that is averred in the present case is that the proceeds "were received by said Merriam and form a part of the assets of his estate now in the hands of said respondent Jones." This is equivalent to a statement that the proceeds in the form of money came into the hands of Merriam, and cannot be traced further, although the plaintiff avers that they were not paid out, but went to increase the assets of the estate.

Where money is received and mingled with one's general property by the holder, and used as his own, there would be great difficulty, in most cases, in showing that none of it was expended or used to pay debts, if it were held for any considerable time. Moreover, if it is impossible to trace the money into any fund or investment, and it becomes part of the general assets of the holder, which assets perhaps have changed their form in a variety of ways after the receipt of the money, it would be impossible to enforce a trust, unless it were established against every variety of property belonging to the holder, including debts, choses in action, and other things which it is not easy to

make the subject of a trust. In the settlement of an insolvent estate there would be little equity in preferring this kind of claim, as against other creditors some of whose claims might be quite as meritorious, and founded on as great a violation of private rights as that of the *cestui que trust.* Except in cases of the insolvency of the trustee, the right to establish a trust against his estate is of no consequence, for all that could be obtained in such a case would be the value of the trust property, or its proceeds, and that can always be collected of the trustee if he is solvent. For different reasons we think the rule stated in *Little* v. *Chadwick, ubi supra,* should be followed, and that a trust should not be declared against the insolvent estate of a deceased person on the ground that the proceeds of trust property went into the general assets, and thereby increased the amount in the hands of the administrator.

The contention of the plaintiff, that the administrator should be compelled to use the general assets of the estate to exonerate the stock in the possession of the bank from its liability for the bank's debt, is simply another way of urging that the general assets of the intestate are impressed with a trust, to the amount of the loan received by the intestate. Unless they are so impressed they cannot be taken from the general creditors and used for the redemption of the trust property in the hands of the bank. The case of *Ex parte Alston,* L. R. 4 Ch. 168, has no application to this contention. That was a case of marshalling assets which had been pledged for a debt of the bankrupt. The pledge included trust property and other property of the bankrupt. It was decided that the other property held in pledge must all be applied to the payment of the debt, to the exoneration of the trust property. In the present case the only property pledged was trust property, and there is no opportunity to marshal assets in the payment of the debt from the proceeds of the pledged property.

> *Bill dismissed, without prejudice to the right of the plaintiff to prove his claim against the estate.*