FRED L. HEWITT, trustee, *vs.* FRANCIS L. HAYES & another, executors.

Suffolk. November 29, 1909. — February 21, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Partnership. Equity Jurisdiction,* For an accounting, Partnership assets in bankruptcy. *Bankruptcy.*

In a suit in equity by the trustee in bankruptcy of the estate of one of the two members of a partnership against the executor of the will of the other partner, to compel the defendant to turn over to the plaintiff whatever assets of the partnership had come into the hands of the defendant, it appeared that about three and a half years before the death of the defendant's testator and about five years before the surviving partner was adjudicated a bankrupt, the last named partner had become involved in financial difficulties and the entire control of the business of the firm was placed in the hands of the defendant's testator, who alone had authority to sign checks or make collections and disbursements and who from that time until the time of his death used the assets of the firm as he saw fit and invested the firm's money in his own name, the firm being then

hopelessly insolvent, as he knew, that at the time of the filing of the bill there were not enough assets of the firm in the estate of the plaintiff's bankrupt, to pay the firm's creditors whose claims had been filed in bankruptcy against him, and not enough individual assets to pay the individual creditors of the bankrupt whose claims had been so filed. *Held*, that the device adopted to remove the plaintiff's bankrupt from any active control or management of the business of the partnership and to give the power of management exclusively to the defendant's testator was in no sense a dissolution of the firm or a transfer of the partnership assets to the defendant's testator, and that, upon the death of the defendant's testator, the plaintiff's bankrupt as the surviving partner became the owner of all the partnership property, charged with the duty of winding up the affairs of the firm and paying its debts ; and that the plaintiff as trustee in bankruptcy of the estate of such surviving partner was entitled to receive from the defendant all the assets and property of the late partnership which had come into his hands, the plaintiff being held to account for such assets in the bankruptcy court.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 5 and amended on June 8, 1909, by the trustee in bankruptcy of the estate of Edward A. Bangs against the executors of the will of S. Gannett Wells, late of Boston.

The bill as amended alleged

That on August 1, 1903, and for a number of years before S. Gannett Wells of Boston and Edward A. Bangs of Wareham were doing business as copartners under the firm name of Bangs and Wells, and had a usual place of business in Boston; that during a portion of that time, and until his decease in the autumn of 1903, Samuel Wells also was a member of the firm ;

That the business of the firm consisted of the handling as agents, trustees, or attorneys, or in some representative capacity, of various properties consisting of real estate and stocks and bonds and cash, receiving the income therefrom, and paying the expenses thereof from the net income of this real and personal property ; that they received their commissions for handling the property and turned over the dividends to the various trustees and individuals for whom they were acting as agents or otherwise ;

That after the decease of Samuel Wells, S. Gannett Wells and Edward A. Bangs were entitled and bound to share the profits and losses in equal portions, and on dissolution of the firm were entitled and bound to share the assets and liabilities in the same manner;

That on February 18, 1907, S. Gannett Wells died, leaving

Bangs the sole surviving partner, and the defendants were appointed by the Probate Court of Suffolk county executors of the will of S. Gannett Wells;

That on May 27, 1908, an involuntary petition in bankruptcy was filed in the United States District Court for the district of Massachusetts, against Bangs, the sole surviving partner of the firm of Bangs and Wells, and on June 15, 1908, he was adjudicated a bankrupt; that on September 8, 1908, the plaintiff was elected trustee in bankruptcy of the estate of Bangs on claims and votes filed by the creditors of the firm of Bangs and Wells, and qualified by giving a bond as called for by the bankruptcy act;

That there were not enough firm assets in the estate of Bangs, the surviving partner, to pay the creditors of the firm, whose claims had been filed in bankruptcy against him; nor were there enough individual assets in the estate of Bangs to pay his individual creditors whose claims had been filed against him. Nor would the money, assets and property which the plaintiff sought to recover in this suit from the defendants, together with all the other assets of the firm, be sufficient to pay in full all the claims of the creditors of the firm.

That on or about August 1, 1903, Bangs had become heavily involved in serious financial difficulties, and the entire control of the firm business of Bangs and Wells was placed in the hands of S. Gannett Wells, who alone had authority to sign checks or make collections and disbursements; that all the bank deposits which were in the name of Bangs and Wells at that time were placed in the name of Wells, subject only to his personal signature; that no firm bank accounts were thereafter subject in any manner to the signature of Bangs, nor did he have any control over such bank accounts, nor was he in any way consulted as to the withdrawals or disbursements therefrom by Wells so far as known to the plaintiff;

That between August 1, 1903, and February 18, 1907, Wells used the bank accounts of the firm, which stood in his name as above set forth, and used the other assets of the firm, consisting of book accounts due for commissions, cash on hand in the money drawer, and the like, as he saw fit, and at various times between those dates subscribed to and paid for shares in the capital stock

of various building trusts with the firm's money and out of the
firm's assets and business, and made loans and advances to
various persons and trusts with whom he was associated with
the firm's money and out of the firm's assets and business; that
all of this stock was purchased in his own name and all of these
loans or advances were evidenced by papers or charges in his
own name;

That at the time these purchases and advances were made by
Wells the firm of Bangs and Wells was hopelessly insolvent, as
he well knew, and the money which was used by him individ-
ually was money which came into the firm on account of these
various clients whom the firm represented as above set forth,
either as collections on their accounts or as commissions on their
business, all being placed in the firm's bank account, subject to
the signature of Wells only;

That the plaintiff was unable to say whether Bangs at the
time of these purchases and advances knew of them, or knew of
the insolvent condition of the firm, and fraudulently assented
thereto, or whether Wells, in the exercise of his control over
the assets and business of the firm, concealed the financial
condition of the firm from his partner, and concealed the fact
that he was purchasing in his own name such stocks and securi-
ties, and was making such advances and loans, or not;

That at the time of the filing of the bill some of the stocks
which were purchased in this manner by Wells were in the hands
of the defendants as executors of his estate; that some of them
had been sold by the defendants since his decease and the proceeds
thereof were in their hands and readily ascertainable; and that
some of the money so advanced by him was evidenced by notes
payable to him, some of which were secured by mortgage and
were also in the possession of the defendants;

That it appeared from the books of the partnership that during
the time when Wells had entire control of the business of the
firm he withdrew from the assets thereof about $14,000 above
his share of the profits thereof, and thereby rendered the firm
insolvent; that this was done by him with his knowledge of the
condition of the firm and of the fact that these withdrawals out
of the capital of the firm or out of the money of the clients
which came into the accounts of the firm were reducing the

fund to which the creditors would some day be obliged to look for payments of their accounts;

That all of the purchases, payments and loans by and to S. Gannett Wells were entered on the books of the firm, and that Bangs at all times had, or might have had if he so wished, access to the books; and

That the estate of Wells was insolvent and unable to pay his individual creditors in full.

The bill prayed

1. That an accounting might be had between the parties, and the amount due from the estate of Wells to the partnership should be determined;

2. That the defendants might be ordered to turn over such stocks, bonds, notes or other securities or evidences of indebtedness as might be in their hands that were purchased by Wells out of the funds of the firm;

3. That the defendants might be ordered to turn over the proceeds from the sale of such stocks, bonds, notes or other securities or evidences of indebtedness as might be in their hands that were purchased by Wells out of the funds of the firm; and

4. For such further relief as to this court might seem necessary.

The defendants demurred to the bill for want of equity.

The case came on to be heard before *Morton, J.,* who at the request of the parties reserved it, upon the demurrer to the bill as amended, for determination by the full court. If the demurrer was sustained, the bill was to be dismissed. If the demurrer was overruled, the defendants were to answer the bill and the case was to stand for hearing.

*F. L. Hewitt,* trustee, *pro se.*

*C. A. Williams,* (*H. Williams, Jr.,* with him,) for the defendants.

SHELDON, J. The arrangement made in August, 1903, between Bangs and Wells was not in any sense a dissolution of their firm or a transfer of its assets or any of them to Wells. It was merely a device adopted to remove Bangs, at least for a time, from any active control or management of the business of the firm and to give the power of management exclusively to

Wells. But the interest and ownership of each of them remained unaffected by the adoption of this device. The rule of *Howe* v. *Lawrence*, 9 Cush. 533, *Case* v. *Beauregard*, 99 U. S. 119, and *Sargent* v. *Blake*, 160 Fed. Rep. 57, has no application here. This case more nearly resembles *Harmon* v. *Clark*, 13 Gray, 114, but is yet stronger than that. Each of the partners remained the owner of a one half interest in the firm and in all its assets. The control which was given to Wells was to be exercised by him for the benefit of Bangs as well as of himself. And upon the averments of the bill it must now be taken that Bangs could at any time have intervened and put a stop to the arrangement that had been made, and have resumed his equal control and power of disposition over the business and assets of the firm. It follows that upon the death of Wells, Bangs as the sole surviving partner at once became the owner of all the partnership property, and charged with the duty of winding up the affairs of the firm, turning its assets into money, and applying such money to the payment of its debts. *Thayer* v. *Badger*, 171 Mass. 279. For this purpose he was entitled to demand and receive from the defendants, the executors of the will of his deceased partner, whatever property of the firm might come into their hands. *Crabtree* v. *Randall*, 133 Mass. 552. *Holmes* v. *Gilman*, 138 N. Y. 369. *Wilson* v. *International Bank*, 125 App. Div. (N. Y.) 568, quoting and following *Williams* v. *Whedon*, 109 N. Y. 333, and *Secor* v. *Tradesmen's National Bank*, 92 App. Div. (N. Y.) 294. *Kutz* v. *Dreibelbis*, 126 Penn. St. 335. *Hawkins* v. *Capron*, 17 R. I. 679. *Fitzpatrick* v. *Flannagan*, 106 U. S. 648. As was said by Colt, J., in *Shearer* v. *Paine*, 12 Allen, 289, 291, this right of the surviving partner is "a right incident to all partnerships, and one of which he cannot be deprived by the personal representative of the deceased partner, in the absence of any allegation of mismanagement or want of capacity," and there is no such allegation here. The amount recoverable in a suit to enforce this right may depend upon the solvency or insolvency of the firm, upon the state of the partnership accounts, or other circumstances. *Wilby* v. *Phinney*, 15 Mass. 116. *Bradley* v. *Brigham*, 144 Mass. 181. *Bird* v. *Bird*, 77 Maine, 499.

This right extends also to all real estate of the partnership,

in whosesoever name the legal title may have been, so far as may be necessary to wind up its affairs, pay its debts, and settle the partnership accounts. *Burnside* v. *Merrick*, 4 Met. 537. *Dyer* v. *Clark*, 5 Met. 562. *Merritt* v. *Dickey*, 38 Mich. 41. *Shanks* v. *Klein*, 104 U. S. 18.

The surviving partner takes the firm property as its absolute owner, though subject to a liability to account for its proceeds and for their application to the payment of the firm debts and the settlement of the partnership accounts. Accordingly his own debts and demands and those due to or from the late firm may be joined in a single action or may be set off against each other. *Holbrook* v. *Lackey*, 13 Met. 132, and cases there cited. An allowance may be made to his widow from the firm assets as from his own personal estate, even though the firm be insolvent. *Bush* v. *Clark*, 127 Mass. 111. He may make a valid assignment of the firm property for the benefit of its creditors. *Haynes* v. *Brooks*, 116 N. Y. 487. He is in all respects dealt with as the owner of the property, though liable to account for its proceeds.

Accordingly it was held under our insolvent law that upon proceedings in insolvency by or against a surviving partner, his assignee will take both the separate property and the firm property of the insolvent debtor, to be distributed respectively in the manner prescribed by the statute. *Burnside* v. *Merrick*, 4 Met. 537. *Howard* v. *Priest*, 5 Met. 582. *Rice, appellant*, 7 Allen, 112. *Durgin* v. *Coolidge*, 3 Allen, 554. Merrick, J., said in the case last cited: " It is therefore quite clear that, upon the death of one of two partners, the survivor may rightfully apply to the Court of Insolvency by petition, and that thereupon due proceedings may be had for the sequestration of the partnership property, and the disposal of it for the payment of the debts due to the partnership creditors." The rule under the United States Bankrupt Acts has not been uniform. In many districts the doctrine declared in this Commonwealth has been adopted and followed. *In re Stevens*, 1 Sawyer, 397. *In re Temple*, 4 Sawyer, 92. *Briswalter* v. *Long*, 14 Fed. Rep. 153. *In re Pierce*, 102 Fed. Rep. 977. It has been denied. *In re Evans*, 20 Am. Bankr. Rep. 406. *In re Bertenshaw*, 157 Fed. Rep. 363. In other cases, although the question was not really raised and

decided, the views taken by different courts have not been the same. *Wright* v. *Nostrand,* 94 N. Y. 31. *Moses* v. *Pond,* 4 Am. Bankr. Rep. 655. *In re Sectional Dock Co.* 3 Dillon, 83. *Vaccaro* v. *Security Bank,* 103 Fed. Rep. 436. *In re Mercur,* 122 Fed. Rep. 384. *In re Forbes,* 128 Fed. Rep. 137. *Mills* v. *Fisher,* 159 Fed. Rep. 897. In *Adams* v. *Terrell,* 4 Fed. Rep. 796, Woods, Circuit Judge, said that the only method by which after the death of one of the partners the property of a partnership could be brought into the bankruptcy court was by service upon the surviving partner, in whom was the title to all the partnership property. In the opinion of the Circuit Court of Appeals in the case of *In re Stein,* 127 Fed. Rep. 547, holding that the insanity of a partner will not bar the prosecution of proceedings in bankruptcy against a firm, it was said: " And so it has been held that a copartnership may be adjudged a bankrupt after the death of one partner, upon an act of bankruptcy committed by the surviving partner, and that the adjudication of bankruptcy of a copartnership does not necessarily draw into the proceeding the estate of every individual member. There have been several adjudications in which the question has been fully considered, and in the result of which we fully concur." And the court cited, beside cases already referred to, *Chemical National Bank* v. *Meyer,* 92 Fed. Rep. 896, affirmed upon appeal *sub nom. In re Meyer,* 98 Fed. Rep. 976 ; *In re Duguid,* 100 Fed. Rep. 274; *In re Barden,* 101 Fed. Rep. 553; *In re Hale,* 107 Fed. Rep. 432; *In re Farley,* 115 Fed. Rep. 359; *In re Dunnigan,* 95 Fed. Rep. 428.

We are of opinion that the rule declared in our own decisions already cited has been approved by the weight of authority in the administration of the federal bankrupt act. It is not denied that it has been adopted by the federal courts of this district. The decision in the Bangs case, brought before us in the record of another case between these parties argued a few days after the case at bar, is decisive upon that point. The plaintiff will be held to account in the bankruptcy court for whatever assets of the late firm they may be able to get into their hands. It is desirable that all those assets should be administered and the affairs of the late firm adjusted, so far as may be, in one forum.

Accordingly we consider that the plaintiff has a right to main-

tain this bill for the purpose of compelling the defendants to turn over to him whatever assets and property of the late firm of Bangs and Wells have come into the hands of the defendants.

It is suggested however that much of the funds in the defendants' hands which are the subject of this bill must be regarded as merely trust funds which ought not to be paid over to a trustee in bankruptcy. But the bill avers that the money which was drawn or received by Wells and used by him in the purchase of the stocks that are sought to be recovered included money of the firm and commissions to which it was entitled.

*Demurrer overruled.*