FRED L. HEWITT, trustee, *vs.* FRANCIS L. HAYES & others, executors.

Suffolk.    December 7, 1909. — March 1, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* To follow trust fund.    *Bankruptcy.*    *Election.*

When a trustee deposits in a bank in one fund, without any earmark, money of his own and money which he holds in trust for another, the beneficiary of the trust, although he is wholly unable to identify his money in the bank, may at his election follow the mixed fund which thus has been created by the trustee and enforce a claim or charge upon it for his indemnity.

In a suit in equity by a beneficiary to follow money of the plaintiff which a trustee has mingled with money of his own in a deposit in a bank, it will be presumed in favor of the plaintiff that, so long as any of the trustee's own money remained in the fund available for use, withdrawals made by the trustee by check from the mixed fund were made from the trustee's own part of the fund and not from the money of the trust.

Where one who is a trustee for a number of separate beneficiaries mingles their money with money of his own and deposits the whole in one fund in a bank, and then is adjudged a bankrupt, a beneficiary whose money is contained in the fund can maintain a suit in equity to charge this particular mixed fund with his claim for indemnity, or he may prove his claim in bankruptcy against the whole estate of the bankrupt trustee in the hands of his trustee in bankruptcy, but he

cannot do both, because the remedies are inconsistent; and, if with a full knowl-
edge of all the circumstances he proves his claim in bankruptcy, this is an elec-
tion of remedy which is a bar to a suit in equity by him to have his claim declared
to be a charge upon the specific fund deposited in the bank. Under what circum-
stances such an election is final, and in what cases a beneficiary, after proving
his claim in bankruptcy, may be allowed to expunge such proof and reassert
his equitable rights, here was not considered.

In a suit in equity by the trustee in bankruptcy of one of the two partners of an
insolvent firm against the executor of the will of the other partner, who died in-
solvent, to compel the defendant to turn over to the plaintiff a specific fund in
the possession of the defendant as executor, where all persons seeking to subject
the fund to liens or charges were admitted to the suit as intervening claimants,
it appeared that the fund in question was deposited in a bank and was a continu-
ation of a general bank account of the insolvent firm which afterwards stood in
the single name of the defendant's testator, and that in it were mingled in one
common fund the money of the firm and of the various claimants to whom the
firm and the defendant's testator stood in a fiduciary relation. It further ap-
peared that on a certain date the account had been overdrawn by more than
$2,000. In determining the respective rights of those of the claimants who
were entitled to pursue this fund, it was *held,* that none of the claimants could
have a charge upon the fund for any deposit made before the date when the
account was overdrawn, and that the amount for which any of them was entitled
to charge the fund after that time must be determined by taking the deposit first
thereafter made of his money and adding to it the amount of any later deposits
of his money; but that the amount must be diminished by the amount of any
withdrawals by the defendant's testator from the portion of the fund which
was subject to the charge in favor of such claimant; that withdrawals made
by the defendant's testator for his own use or that of his firm must be treated
as made from that part of the fund which belonged to him or them so far as
that was practicable; but that, when this could not be done, the withdrawals,
as among those claimants who were entitled to charge the fund, must be charged
against the deposits in the order of their respective dates, the rule that the first
withdrawals should be applied to the first deposits being followed among the
claimants, although not followed between them and the defendant's testator, who
was their trustee; that, when the amount subject to a charge in favor of a
claimant had been diminished to any extent by withdrawals, it was not to be
increased by any subsequent deposit made by the defendant's testator of money
which was not shown to have been the money of that particular claimant; and
that no claimant was to be allowed a charge upon any part of the fund which,
under the rules stated above, was subject to a charge in favor of a claimant
prior to him in time; that, if the total amount that could be held by all the
claimants who were entitled to charges upon the fund, when determined as
above, exceeded the amount of the fund, the fund was to be distributed among
them in proportion to the amounts of their respective charges; and that, if
the total amount of the charges was less than the amount of the fund, the claim-
ants entitled to the charges were to receive the amounts of their respective
charges in full, and the residue of the fund was to be paid to the plaintiff as
trustee in bankruptcy.

BILL IN EQUITY, filed in the Supreme Judicial Court on
September 28, 1908, and amended on October 1, 1908, and

October 5, 1909, by the trustee in bankruptcy of the estate of Edward A. Bangs against the executors of the will of S. Gannett Wells, late of Boston, and by the later amendment against the defendants Hayes and Wing individually, to compel the defendants to pay and turn over to the plaintiff certain deposits in Boston banks amounting to about $27,000 standing in the names of the defendants as executors and a deposit of about $11,000 in the National Shawmut Bank standing in the names of the defendants individually, or such portion of such funds as might be found to be partnership property of the firm of Bangs and Wells, to be administered by the plaintiff as a part of the estate of the bankrupt as the surviving member of that firm.

An interlocutory decree was made ordering that the persons named therein for whom the firm of Bangs and Wells were acting as trustees, agents or attorneys or in any other fiduciary capacity at the time of the death of Wells should be made parties defendant.

The case was referred to Ethelbert V. Grabill, Esquire, as master, "to hear the parties and their evidence, to find the facts and report the same to the court." The master filed a report, and later filed a supplemental report upon certain matters in regard to which the report had been recommitted to him. The essential facts reported by the master are stated in the opinion.

The case came on to be heard, upon the pleadings, the master's report and supplemental report and the exceptions thereto, before *Braley*, J., who reserved it for determination by the full court.

*F. L. Hewitt*, trustee in bankruptcy of the estate of Edward A. Bangs, *pro se.*

*H. Williams, Jr.*, ( *C. A. Williams* with him,) for Francis L. Hayes and others, executors of the will of S. Gannett Wells, and for Francis L. Hayes and another, individually.

*L. C. Southard & G. L. Ellsworth*, for William E. Boardman and others.

*R. Homans*, ( *F. J. Sulloway* with him,) for Francis R. Bangs and others.

*R. H. Gardiner, Jr.*, for David H. Hodgkinson and others, intervening claimants.

SHELDON, J. It has been decided that the plaintiff is entitled to require the original defendants, the executors of the will of

Samuel G. Wells, who was a partner in the late firm of Bangs and Wells, to turn over to the plaintiff all the property and assets of that firm which have come into the hands of the defendants. *Hewitt* v. *Hayes*, 204 Mass. 586. This bill is brought to compel them to turn over and deliver to the plaintiff certain specific funds in the possession of the defendants. The main question raised as to each of these funds is whether they should be regarded as assets of the late firm that ought to be applied in payment of its debts or whether they are made up of trust moneys, which the intervening claimants or any of them have a right to hold, or at least to subject to an equitable lien or charge in behalf of the claimants.

One of these funds, which has been called in argument the " for whom it may concern" fund was created and is held by the defendants Hayes and Wing individually. They were acting under the power of attorney given to them by Bangs after the death of Wells. This fund was made up of the cash found in the cash drawer of the firm which belonged to the firm itself and of other sums which also belonged to the firm, either as the proceeds of its property or as commissions due to it or otherwise. This fund is now deposited in the Shawmut National Bank in the names of the defendants Hayes and Wing "for the benefit of whom it may concern." It now amounts to more than $10,000. In our opinion this fund, which has been derived entirely from the property of the late firm, should be paid by Hayes and Wing to the plaintiff as prayed for in the bill; and the decree will so order.

The " S. G. W. fund," it has been found, belongs as between the late firm and the individual estate of Wells entirely to the former. This finding was excepted to by the executors of Wells; but it seems to us that it is not inconsistent with any of the subsidiary findings upon which it was based, and the evidence is not reported. It follows that this exception to the master's supplementary report must be overruled.

Certain of the intervening claimants have excepted to the master's finding that the S. G. W. fund was one entire bank account, in no way separated or divided into parts so that any separate or distinct parts thereof were or could be established as trust property belonging to any of the claimants, and also to the

ruling of the master made upon the tabulations submitted by these claimants and their contention that thereby certain distinct shares or proportions of this fund could be established or identified as trust property belonging to them. And some of the intervening claimants contend that in equity they are at least entitled severally to a charge or lien upon this fund for their satisfaction. Others of the claimants agree with the contention made by the plaintiff. These contentions raise the questions which are now to be passed upon.

It is not disputed and we do not doubt that the relations between the late firm of Bangs and Wells and each of its members on the one side and the respective parties for whom they acted, including these claimants, on the other side, were strictly fiduciary. Either the firm or one of its members had been appointed and was acting as trustee for some of them, either by virtue of an appointment by the Probate Court or under some agreement between the parties. In other cases the firm was acting as the representative or agent of other trustees or in the management of property which had been committed to its care by the owners thereof. Their relations were strictly confidential and fiduciary, and they were under the ordinary obligations of trustees. *Campbell* v. *Cook*, 193 Mass. 251. *Matter of Le Blanc*, 14 Hun, 8. *Union Stock Yards Bank* v. *Gillespie*, 137 U. S. 411. *Gibert* v. *Gonard*, 54 L. J. (N. S.) Ch. 439.

This fund, which had been deposited in the name of Wells in the City Trust Company, was really a continuation of the general bank account of the firm. Both money belonging to the firm itself and money collected by it or by Wells for it, but belonging to different principals or *cestuis que trust* for whom it had been collected, were deposited in this account. The latter amounts however made up the larger part of the deposits. Wells also drew checks against this fund or account, partly for the private uses of the firm or its partners, but mainly for proper payments to or for some or others of the parties to whom it equitably, in part at least, belonged. But all the amounts, including what belonged to the firm or to either of the partners therein and the different amounts that should have been paid to the respective principals or beneficiaries for whom it was held,

were mingled in the bank in one common fund, so that, after
the various deposits and the various withdrawals that were
made, it would be difficult, if not impossible, upon any practi-
cable method of identification or computation, to ascertain or
distinguish any separate parts thereof as trust property belonging
in equity to any of the intervening claimants.   This is especially
true when we consider that the amount of this fund is only
about one-half of the total amount due to the claimants; and no
apportionment of the fund could be made among them on the
basis of an identification of their property without such inequality
as might practically be a denial of justice to some of them.   We
are of opinion that the exceptions taken by some of the inter-
vening claimants to the master's supplementary report should be
overruled.

But these considerations do not dispose of all the questions
raised in the case.   We regard it as settled, to go no further
than the facts in the case at bar, that when a trustee deposits in
a bank in one fund without any earmark money of his own and
money which he holds in trust for another, the beneficiary,
though wholly unable to identify his money in the bank, may
yet at his election follow the mixed fund which has been thus
created by the trustee, and enforce a claim or charge thereon for
his indemnity.   And for the protection of the beneficiary it will
be presumed that withdrawals made by the trustee by check
from this mixed fund were made from the trustee's own part of
the fund and not from that part which consisted of the trust
money, so long as there remains in the fund available for use
any part of the trustee's own money.   *National Bank* v. *Insur-
ance Co.* 104 U. S. 54, citing and stating the cases of *Pennell* v.
*Deffell,* 4 DeG., M. & G. 372; *Frith* v. *Cartland,* 2 Hem. &
M. 417; *In re West of England & South Wales District Bank,*
11 Ch. D. 772; *In re Hallett's estate,* 13 Ch. D. 696; *Taylor* v.
*Plumer,* 3 M. & S. 562; *Farmers' & Mechanics' National Bank,*
v. *King,* 57 Penn. St. 202; *Van Alen* v. *American National
Bank,* 52 N. Y. 1.   The rule in *Clayton's case,* 1 Mer. 572, that
checks are to be applied against deposits in the order of their
respective dates, has been modified to this extent, as is shown
by the cases above cited.   And see further as to the general
principle stated, *Houghton* v. *Davenport,* 74 Maine, 590; *Cush-*

*man* v. *Goodwin*, 95 Maine, 353; *Importers & Traders' National Bank* v. *Peters*, 123 N. Y. 272; *Ellicott* v. *Kuhl*, 15 Dick. 333; *Fire & Water Commissioners* v. *Wilkinson*, 119 Mich. 655; *Peak* v. *Ellicott*, 30 Kans. 156; *Elizalde* v. *Elizalde*, 137 Cal. 634; *Richardson* v. *New Orleans Debenture Redemption Co.* 102 Fed. Rep. 780; *Hancock* v. *Smith*, 41 Ch. D. 456; *Ex parte Cooke*, 4 Ch. D. 123. The converse of this doctrine was maintained in *In re Oatway*, [1903] 2 Ch. 356.

The beneficiary is not allowed a charge upon the entire fund, regardless of deposits and withdrawals made after the deposit of his own money, but only upon what is left in the fund after the application in the mode we have stated of whatever withdrawals have been made by the trustee. *Peters* v. *Bain*, 133 U. S. 670. *In re Mulligan*, 116 Fed. Rep. 715; and 9 Am. Bank. Rep. 8, 11. *Boone County National Bank* v. *Latimer*, 67 Fed. Rep. 27. *Ober & Sons Co.* v. *Cochran*, 118 Ga. 396. *Woodhouse* v. *Crandall*, 197 Ill. 104. *Burnham* v. *Barth*, 89 Wis. 362. He is not given a charge upon the general estate of the trustee, on the ground that that estate has been enriched at his expense, but is merely allowed to hold a charge upon the specific account or fund into which his money has gone, and in which equity can presume that it still remains. See the discussion of this question in the note to *Board of County Commissioners* v. *Strawn*, 15 L. R. A. (N. S.) 1100.

But it is said that our own recent decisions are at variance with this doctrine. We do not so consider. *Little* v. *Chadwick*, 151 Mass. 109, turned on the fact that the trust fund there in question could neither be identified nor traced into any specific fund; and the court said that it was not enough that it had gone into the general estate of the defaulting trustee. But it was expressly stated in the opinion, as indeed is manifest, that there was nothing in that decision contrary to *National Bank* v. *Insurance Co.* 104 U. S. 54; or *In re Hallett's estate*, 13 Ch. D. 696. The same thing is true of *Lowe* v. *Jones*, 192 Mass. 94. It was really sought in that case to establish a trust in the general assets of an insolvent estate upon the ground that the proceeds of trust property wrongfully disposed of had gone into those general assets, and thus increased the amount of the estate. There is some authority for that contention (see the cases col-

lected by Professor Ames in 19 Harv. Law Rev. 519 *et seq.*
note), but this court has never adopted it, and we are not now
disposed to do so.   In *O'Brien* v. *New England Trust Co.* 183
Mass. 186, no one but the executrix of the deceased sheriff made
any claim to the deposit.   And see further *Le Breton* v. *Peirce,*
2 Allen, 8; *Andrews* v. *Bank of Cape Ann,* 3 Allen, 313; *White*
v. *Chapin,* 134 Mass. 230; *Howard* v. *Fay,* 138 Mass. 104;
*Attorney General* v. *Brigham,* 142 Mass. 248.

It would be easy to apply the principle which we have stated
and to enforce an equitable charge upon this fund for the pro-
tection of a *cestui que trust* whose money has gone into it and
has remained a part of it, if we had to do with only one claim of
this kind.   But here there are several such claimants.   And
they fall naturally into two classes, by reason of the fact that
some of them have proved their claims in the bankruptcy pro-
ceedings against Bangs.   It must be determined whether that
act deprives them of the right to the equitable remedy which
they now seek.

Beneficiaries who do not receive from their trustee or agent
what he ought to pay them may either bring an action, with or
without an attachment of property, taking the position of an
ordinary creditor, or they may seek to enforce their rights by such
equitable remedies as are available to them.   And while the de-
faulter remains solvent, so that he can be compelled to meet all
his obligations, legal or equitable, there may be no difficulty in
allowing them to proceed simultaneously in both ways.   But
upon the bankruptcy of their debtor or defaulter, the case be-
comes different.   If they appropriate to themselves a fund which
they can reach upon the equitable doctrine that we have stated,
they thereby assume a different position from that of ordinary
creditors of a common debtor; they assert rights superior to
those of ordinary creditors; and by the enforcement of those
rights they diminish the fund to which those creditors must look
for a dividend.   If on the other hand they choose to prove their
claims as creditors, they can then look, not merely to the specific
fund into which they might have traced some part of their money,
but to all the assets, and share in those assets *pari passu* with the
other creditors.   Obviously in some cases the one course, and in
some cases the other, will be for their advantage.   And these

are wholly inconsistent remedies. In one case, they rank themselves as creditors; in the other, they claim to be entitled to a charge upon some specific fund or property. Under these circumstances, it is the right of the general creditors and of the trustee in bankruptcy as their representative to require those who have the choice of these inconsistent remedies to elect between them. And their final adoption of one course, their completed election to avail themselves of one remedy, if made without mistake and with full knowledge of all the circumstances, is a bar to their pursuit of the other remedy. *Washburn* v. *Great Western Ins. Co.* 114 Mass. 175. *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 208. *Frisch* v. *Wells*, 200 Mass. 429. *Russell* v. *Owen*, 61 Mo. 185. *Conrow* v. *Little*, 115 N. Y. 387. *Stewart* v. *Isidor*, 5 Abbott Pr. (N. S.) 68. *Brown* v. *Farmers Bank of Kentucky*, 6 Bush, 198. *In re Granger*, 8 Nat. Bankr. Reg. 30, 37. There is no suggestion that any of those proofs was made under a mistake, as in *Morse* v. *Lowell*, 7 Met. 152; *Importers & Traders' National Bank* v. *Peters*, 123 N. Y. 272; and *Richardson* v. *Olivier*, 105 Fed. Rep. 277. No steps have been taken to amend or withdraw any proof, as in *Watson* v. *Phœnix Bank*, 8 Met. 217, 222, 223; *Bemis* v. *Smith*, 10 Met. 194; *Nichols* v. *Smith*, 143 Mass. 455; and *In re Wilder*, 101 Fed. Rep. 104. There was no erroneous choice of a remedy that did not actually exist, as in *Snow* v. *Alley*, 156 Mass. 193; and *Doucette* v. *Baldwin*, 194 Mass. 131. *Franklin County National Bank* v. *First National Bank of Greenfield*, 138 Mass. 515, was decided upon its peculiar circumstances, and has no bearing here. The decision in *Boston* v. *Turner*, 201 Mass. 190, turned upon the proposition that the remedies given to a tax collector to enforce the payment of taxes are cumulative, and that he is under no duty to elect between them. It was assumed that otherwise his proof in bankruptcy would have been a waiver of his equitable remedy.

Accordingly we are of opinion that those of the claimants, who have proved their demands against the estate of Bangs in bankruptcy, have thereby waived any right to a charge upon this fund. The question whether this was a final election, or whether those claimants can now, upon expunging their proofs in bankruptcy, reassert their equitable rights, as was done in some of the cases above cited, has not been argued, and is not decided.

It has been found that on January 2, 1907, this fund was overdrawn by more than $2,000. It follows that no one of the claimants can have a charge upon the fund for any deposit made before that date. The amount for which any of them is entitled to a charge after that time must be determined by taking the deposit first thereafter made of his money and adding thereto the amount of any such later deposits. But that amount must be diminished by the amount of any diminution of the fund made by withdrawals by Wells from that part of the fund which was subject to the charge. Withdrawals made by Wells for his own use or that of his firm must be treated as made from that part of the fund which belonged to him or them so far as that is practicable. But when this cannot be done, such withdrawals must, as among those claimants who are entitled to a charge upon the fund, be charged against the deposits in the order of their respective dates, the doctrine that the first withdrawals will be applied to the first deposits being followed among the claimants though not followed between them and their trustee. And when the amount subject to a charge in favor of a claimant has been diminished to any extent by the application against it of such withdrawals, it is not, nor is it ever, to be increased by any subsequent deposit by Wells or the firm of other money, not shown to have been the money of that particular claimant. *Board of County Commissioners* v. *Strawn*, 157 Fed. Rep. 49. And see *In re Mulligan*, 116 Fed. Rep. 715. The fund must be treated as having so far been dissipated once for all, with the result that there is no longer any equitable charge for its repayment. The fact that the firm was insolvent is of itself enough to bring about this result, and prevent the application of the rule stated in *United National Bank* v. *Weatherby*, 70 App. Div. (N. Y.) 279. And no claimant is to be allowed a charge or lien by reason of any part of the fund which, under the rules stated, was subject to a charge in favor of a claimant who was prior to him in time.

If the total amount that can be held by all the claimants who are entitled to a charge upon the fund thus determined exceeds the amount of the fund, then that amount is to be divided among them in proportion to the amounts of their respective charges. *McBride* v. *Potter-Lovell Co.* 169 Mass. 7.

If the total amount of their charges is less than the amount of this fund, then they are to receive the amount of their respective charges in full (*Hancock* v. *Smith*, 41 Ch. D. 456 ; *Baker* v. *New York National Exchange Bank*, 100 N. Y. 31), and the residue of the fund will be paid to the plaintiff. The case must be remitted to the master to find and state these amounts and the total amount of the fund, as this may have increased by the addition of interest.

A decree will be entered in accordance with the opinion.

*So ordered.*