WILLIAM S. MOORE *vs.* MARY E. MANSFIELD.

Suffolk.   December 11, 12, 1923. — February 28, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* To enforce constructive trust in money deposited in savings bank in wife's name alone but for mutual benefit of husband and wife, Res judicata, Election of remedy, Laches. *Husband and Wife.*

At the trial of a suit in equity by a husband after the death of his wife to require payment to him of a balance standing in a savings bank in the name of his wife which, before her death, she had transferred without consideration to the defendant, it appeared that at the time that the plaintiff was married, in 1896, the wife had an account in the savings bank in her own name; that withdrawals from the account were made in 1896, 1897 and 1898 amounting to more than the balance at the

time of the marriage; that the plaintiff turned over his wages to his wife, after the deduction of a small sum for himself, giving " it to her so that . . . [they] might sometime have a home of . . . [their] own; " that in 1911 the wife transferred the account to the defendant, who gave her a note for its amount; that in 1912 the wife delivered the note to the defendant directing that it be destroyed. The trial judge in effect found that the money given by the plaintiff to his wife was turned over to her for their mutual benefit so that they might sometime have a home of their own. *Held,* that

(1) The plaintiff was entitled to enforce the claim to the money transferred to the defendant as money given by him to his wife and deposited by her in the savings bank in her own name in trust for her and her husband;

(2) It would be presumed that the withdrawals made by the wife from the account were from her individual part of the fund and not from that part which consisted of trust money, so long as there remained in the fund any part of the wife's own money;

(3) The entire deposit at the time of the death of the wife was charged with the trust and was the property of the plaintiff.

It appeared that, previous to the commencement of the suit in equity above described, the husband as administrator with the will annexed of the estate of the wife had brought an action at law against the defendant with a declaration in two counts, the first upon the defendant's note and the second for money lent, and that in that action judgment was rendered for the defendant. *Held,* that such judgment was not *res judicata* and that the doctrine of election did not apply to bar the present suit, since the parties in the two suits were different, one being brought by the plaintiff in his capacity as administrator and the other in his individual capacity, and the issues were different.

In the above described suit it appeared that the action at law was brought in 1912, the year in which the wife died. It was tried in March, 1916. The suit in equity was brought in April, 1916. *Held,* that it could not be said that the plaintiff was guilty of laches in bringing the suit in equity.

BILL IN EQUITY, filed in the Superior Court on April 11, 1916, seeking to establish the right of the plaintiff in a savings bank fund formerly standing in the name of his wife, Rose A. Moore, and by her transferred to the defendant, Mary E. Mansfield, by whom it was used to purchase real estate; that " the defendant be ordered to convey to the plaintiff the real estate . . . as having been purchased with the said fund; " and that " the defendant be ordered to pay to the plaintiff the sum of $1,244.14 with interest from the date when the fund or the order therefor was delivered to the defendant, or such sum as the court may find the plaintiff is entitled to."

In the Superior Court, the suit was heard by *Lawton*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. It appeared that the plaintiff's wife died on March 27, 1912; that the plaintiff was appointed administrator of her estate with the will annexed; that he learned of the assignment of the bank book, and, on August 1, 1912, as administrator, brought an action against the defendant with a declaration in two counts, one on the note given by the defendant to the wife, described in the opinion, and the other for money loaned. There was a verdict and judgment in that action for the defendant in March, 1916.

Other material evidence is described in the opinion. By order of *Sisk*, J., a final decree was entered directing the payment to the plaintiff by the defendant of the sum of $1,244.14, principal, and interest in the amount of $760.90. The defendant appealed.

*L. M. Harlow*, for the defendant.

*D. M. Lyons*, for the plaintiff.

CROSBY, J. This bill in equity is brought to recover the sum of $1,244.14, delivered by the plaintiff's deceased wife to the defendant and claimed by the plaintiff as his property. The suit was heard by a judge of the Superior Court who found for the plaintiff, and a final decree has been entered ordering the defendant to repay to the plaintiff the amount with interest and costs. The evidence was taken by a commissioner and is annexed to the record. The suit is before us on an appeal by the defendant from the final decree.

The bill alleges that the plaintiff married Rose A. Moore on January 14, 1896; that he lived with her until the date of her death on March 27, 1912; that during the period of their married life he turned over to her from time to time sums of money varying in amounts; that the money so given was to be used for the joint support of both, and for the maintenance of their home, and that sums not needed for these purposes were to be kept by her for him; that the money was deposited in the Westfield Savings Bank in her name, and was charged with a trust in favor of the plaintiff.

There is but little dispute as to the facts. At the date of

the marriage the plaintiff's wife had a deposit in the West-field Savings Bank in her maiden name of Rosey McManus. The account, as appears by the pass book, began with a deposit of $34 on July 28, 1884. At the date of her marriage it amounted to $614. Before and after her marriage various sums on different dates were deposited and withdrawn, and at the date of her death the balance was $1,244.14.

The plaintiff testified that a few days after their marriage his wife withdrew from the bank $300 to pay for household furniture which they had purchased just before the marriage; that he had no money at that time. It appears from the pass book that on January 18, 1896, $300 was withdrawn. He further testified that when he started in business for himself in the fall of 1897, she drew from the account $200 to assist him, and the judge so found. The pass book, however, shows but one withdrawal that fall, which was the sum of $190 on September 14, 1897. The plaintiff also testified that on another occasion his wife drew $25 and gave it to him to help pay his father's funeral expenses; that at other times she withdrew small sums and gave them to him. The book shows that $175 was drawn on October 5, 1898; this is not accounted for. At the time of the marriage and for about three years thereafter they lived in Westfield, and in April, 1899, they moved to Boston and lived there until her death. He was a carpenter, working by the day, during their married life, except for a short time when he was in business for himself. He testified that while residing in Westfield the household bills were paid by him, that he retained a small sum each pay day out of his wages and gave the balance to his wife; that after moving to Boston his wife paid cash for household supplies and that he gave her his wages, first deducting a small sum which he reserved for himself; that he " gave it to her so that . . . [they] might sometime have a home of . . . [their] own."

The defendant was a sister of the plaintiff's wife, who was in poor health for some time previous to her death, and on different occasions made long visits at the defendant's house, where she died. The relations between them evidently were very intimate and friendly. On May 20, 1911,

while Mrs. Moore was in a hospital in Roxbury, the defendant went to see her and she gave the defendant a written order for the amount of the deposit, to be used by the latter to help in purchasing a house in Springfield. On July 10, 1911, the amount due ($1,244.14) was paid over on Mrs. Mansfield's order as part payment for the house so purchased, and it was agreed between these sisters that when Mrs. Mansfield became settled in the house Mrs. Moore would go there, which she did in June, 1911, and remained until the following October paying no board. In August or September, 1911, the defendant gave to Mrs. Moore a note for $1,244.14, saying " something might happen to me, I might die first." In February, 1912, the defendant, at her sister's request, came to Boston and took her to the defendant's house in Springfield where she died March 27, 1912. The trial judge found that a few days before her death she gave the defendant the note; at that time she said, in substance, " the lawyer says the will I made is not good against my husband, but I want you to have this money and so I am giving you this note as I want you to have the money. Take the note and destroy it." At that time the defendant received and destroyed the note.

In 1899 the deceased made a will in which she left all her estate to Rose A. Mansfield, the defendant's daughter, and named the defendant executrix. The assignment of the deposit, the giving of the note, and the making of the will were unknown to the plaintiff until after the death of his wife. There were no children by the marriage and the estate was less than $5,000. Soon after the death of his wife, the plaintiff was appointed by the Probate Court of Suffolk County administrator of her estate, and having learned of the assignment of the deposit and the giving of the note, on August 1, 1912, he brought an action against Mrs. Mansfield in Hampden County declaring upon the note in one count, and in the other for money lent. The answer was a general denial and payment. The case was tried and judgment was entered for the defendant. In February, 1915, on petition of Rose A. Mansfield, the will of Mrs. Moore was

allowed, and later the plaintiff was appointed administrator with the will annexed.

The trial judge after making specific findings of fact found that " the essential allegations in the plaintiff's bill are true," and ordered that a decree be entered charging the defendant with the full amount of the deposit with interest. This finding cannot be said to be unsupported by evidence and must stand. The effect of the finding is that the money given by the plaintiff to his wife was turned over to her for their mutual benefit, so that they might sometime have a home of their own. It is plain that it was not a gift to her, but that a trust was created for their joint benefit, and, she having deceased, the fund belongs to him. *McCluskey* v. *Provident Institution for Savings*, 103 Mass. 300, 302. *Jacobs* v. *Hesler*, 113 Mass. 157, 161.

While the money so given her in trust was deposited in the bank to the credit of her account and became a part of her separate fund, and the plaintiff is unable to identify his money so deposited, still he may enforce his claim, as it will be presumed that withdrawals from the account made by her were from her individual part of the fund, and not from that part which consisted of the trust money, so long as there remains in the fund any part of the trustee's own money. *Hewitt* v. *Hayes*, 205 Mass. 356, 361. We need not consider whether the plaintiff could make a valid gift to his wife to take effect during his lifetime, as there is no evidence to show that any money turned over to her by him was intended as a gift. So far as his testimony is concerned it shows that no gift was intended, and no inference from the entire evidence would warrant a contrary conclusion.

Whether the whole amount of the deposit is charged with a trust in favor of the plaintiff depends upon whether any part of it was the separate property of Mrs. Moore. Upon this question it appears as previously stated that at the date of her marriage the deposit amounted to $614; that afterwards she drew out $300 to pay for household furniture; and the plaintiff testified that she drew $200 to help him in going into business, and $25 to assist in paying the funeral

expenses of his father. Other small sums which she drew at various times and gave to him need not be considered, as he was unable to state the amounts or times when they were so paid. In addition to the above sums drawn from the bank, amounting to $525, it also appears that she drew $175, which is not accounted for and which must be presumed to have been drawn from her own fund. *Hewitt* v. *Hayes, supra.* It is therefore plain that her total withdrawals were considerably in excess of the balance of her deposit at the time of their marriage. It follows that the entire deposit at the time of her death is charged with a trust and is the property of the plaintiff.

The contentions that the judgment for the defendant in the action brought against her by the plaintiff as administrator is *res adjudicata,* and that the doctrine of election applies, cannot be sustained. The plaintiff in this suit, brought in his individual capacity, is not the same plaintiff as in the action at law. Moreover, the issues tried and determined in that action are not the same as those in the present case. Accordingly the former judgment is not a bar to the maintenance of this proceeding. *Corbett* v. *Boston & Maine Railroad,* 219 Mass. 351, 357. *Frost* v. *Thompson,* 219 Mass. 360, 367, 369. *Rollins* v. *Bay View Auto Parts Co.* 239 Mass. 414, 422.

It cannot be ruled as matter of law that the plaintiff is precluded from maintaining the bill on the ground of laches. The record shows that the action was brought by him as administrator in 1912, the year in which his wife died; that it was not tried until March 13, 1916; and that the present bill was filed on April 11, 1916. Upon these facts it cannot be said that the plaintiff delayed an unreasonable time in bringing the bill.

No exceptions having been taken to the failure of the judge to give the defendant's requests for rulings, they are not before us. As the final decree was not unwarranted it must be affirmed.

*So ordered.*