NATIONAL MAHAIWE BANK *vs.* JAMES W. BARRY & others.

Berkshire. Sept. 11, 1877. — July 18, 1878. ENDICOTT & LORD, JJ., absent.

Equity will charge land, paid for in part with money known to have been stolen from a bank, with a trust in favor of the bank for the amount so used.

On a bill in equity by a bank to charge land, alleged to have been paid for in part with money known to have been stolen from the bank, with a trust in its favor to the extent of the partial payment, evidence that a short time before the purchase of the land a son of the purchaser received from the thief, knowing it to have been stolen, about the amount of the partial payment; that the son was a minor, living at home with his parents, and that neither the purchaser nor her husband had sufficient means to make such payment, will warrant a decree in favor of the plaintiff.

When a case in equity comes before the full court on a bill of exceptions to the ruling of a single judge, instead of on appeal, no question of fact is open.

BILL IN EQUITY, inserted in an original writ of summons and attachment, dated April 21, 1873, against Joseph T. Barry James W. Barry, Jane Barry and Robert Girling.

The bill alleged that on or about October 21, 1871, William S. Hine stole over $25,000 of the plaintiff's money ; that Joseph T. Barry knowingly aided Hine in the theft and received $1700 of the money so stolen ; and that James W. Barry and Jane Barry, the parents of Joseph T., fraudulently conspired with him to conceal that amount from the plaintiff by giving $1500 of it in part payment of certain real estate purchased of Girling for $2500, Jane, to whom the title was conveyed on November 6, 1871, giving her promissory note for the balance of the purchase money, secured by a mortgage upon the real estate, to which James W. assented in writing.

The prayer of the bill was that Jane might be adjudged to hold the real estate in trust for the plaintiff and James W., and Jane ordered to convey the same to the plaintiff, or that the real estate might be sold and the plaintiff's claim satisfied out of the proceeds of the sale ; and for general relief.   The defendants, with the exception of Girling, filed answers, each containing a demurrer for want of equity.

*Colt*, J., overruled the demurrers ; from this order the defendants appealed ; and the case was then heard on the merits, before the same judge.

John E. Dodge testified that he was the president of the plaintiff bank in 1871 ; that on October 21, of that year, William S. Hine was employed as a clerk and bookkeeper in the bank, and on that day stole about $25,000 of the plaintiff's money and went to California with the same, and was arrested there and brought back to Great Barrington in November, 1871 ; that he knew the defendant, Joseph T. Barry ; that he had never had any conversation with him, and knew nothing of his having had any of the stolen money ; and that the plaintiff recovered of Hine between. $18,000 and $19,000 of the stolen money, with a diamond ring and watch, and received nothing further.

The plaintiff then put into the case the record of an indictment against Joseph T. Barry, for larceny and for receiving a part of the money stolen by Hine, upon which he was tried and found guilty on the count for receiving stolen property, and sentenced to imprisonment in the house of correction.

The plaintiff put in the deposition of Hine, which set forth that he was teller in the plaintiff bank from 1869 to 1871, and

at the time of the stealing of the plaintiff's money; that Joseph
T. Barry had nothing to do with the taking of the money; that
he gave to Joseph T. $1700 of the plaintiff's money, and he re-
ceived it, knowing of the larceny; that he talked about it with
the prisoners at the prison, or some of them; that he received
no letter from Barry during the time he was in prison, and that
he knew George B. Seeley, and was a friend of his, and was vis-
ited by Seeley while he was serving his sentence in prison.

George B. Seeley testified that Joseph T. Barry told him he
had received from Hine $1500 of the bank's money, and said he
supposed he was "shadowed," but promised to visit Hine in
prison as soon as he could safely do so; and that he told him at
one time that the money was safe, and at another time that it
was hidden at Flushing, Long Island.

The plaintiff then called as a witness the defendant, James
W. Barry, who testified that he was the father of Joseph T. and
husband of Jane Barry; that he had lived at Great Barrington
about twenty-one years, and kept a boot and shoe store there four
or five years; that he was a boot and shoemaker by trade; that
he failed twice while in business in Great Barrington; that he
failed first in 1868 or 1869, and again in 1871; that, when he
failed the first time, he compromised with his creditors at fifty
cents on the dollar, his wife letting him have $800 to pay the
percentage, and that was all he was able to pay his creditors;
that at that time he knew his wife had property of her own; that
he then continued in business till 1871, and in the mean time
had paid back to his wife about $600 of the $800; that in 1871
he again failed, his stock of goods was attached and sold on a
writ, the money resulting from the sale paying about fifty cents
on the dollar of his indebtedness; that a policy of life insurance
was pledged by him, securing twenty-five per cent. more; that
in 1856 he bought a house and lot, agreeing to pay therefor
$800; that he paid $50 down, and, with the assistance of his
wife, finished paying for the house and lot in 1860; that in
1863 or 1864, he enlisted in the United States army, and re-
ceived a bounty from the town of $300 or $350, which he gave
to his wife, and also gave her all the other bounty which he
received, and also his monthly pay while in the service, which
amounted in all to between $900 and $1000, she also receiving

$12 a month state aid while he was in the service; that she also received the wages for the labor of four minor children in the factory; that the oldest child in 1864 was 13 or 14 years old, and the youngest 9 or 10; that all lived at home; that in 1863 or 1864, when he went into the service, he caused the title to the homestead to be transferred to his wife, and since then the title thereof has stood in her name; that, when he was making a settlement with his creditors in 1871, he did not recollect telling Mr. Dewey that his wife had nothing aside from the homestead with which to help him pay his creditors, but he did know that his wife did then have money of her own, but he would not swear that he did not tell Mr. Dewey so; that his wife always saved money; that she kept it in her bed-room, and he knew she had it on November 6, 1871; that he was present when she paid Girling the $1500 on that day, but he did not know where she took the money from, but he saw it in Mr. Dewey's office when the deed was made; that he knew of his own knowledge that she had $1500, and knew it a year before 1871, because she was going to buy a place of one Hollister, and he went to see Hollister about buying the same; that he thought she had $2000 in money at that time; that she had been saving this money for a number of years perhaps; and that she had a pocket-book, but kept her money in a square box, he thought a tin box, where he kept his deeds, &c.

Justin Dewey, Jr., one of the counsel for the plaintiff and counsel for the creditors of James W. Barry, and who made the deed from Girling to Jane Barry, testified that he did not recollect the percentage that James W. Barry paid to his creditors; that he brought an action against said James W. in 1871, and attached his goods; that they were sold, and paid about fifty cents on the dollar; that James W. said he could not pay any more; that he asked James W. if his wife had any means to assist him, and he said no, unless she would mortgage her homestead; that he asked James W. if his wife would give a mortgage on the homestead, and he said he would go and see her, and he did go, and returned saying that she would not mortgage her homestead for fear of losing it; and that they finally agreed on a certain amount, and James W. assigned his life insurance as collateral security for a note given in settlement to make up the balance of

seventy-five cents on the dollar, and, not being able to pay the note at maturity, forfeited the policy to the creditor.

It appeared that at the times of the conveyance, and of the larceny by Hine, and the receiving of the money by Joseph T. Barry, the latter was a minor, living at home with his parents, and was still a minor at the time of bringing this bill.

The defendants, Jane and Joseph T. Barry, were present in court during the whole of the hearing, and heard the testimony above recited. The plaintiff knew they were present and heard the same, and did not ask either of them to testify; and no further evidence was offered.

The defendants asked the judge to enter a decree dismissing the bill, contending that the evidence offered would not justify a decree for the plaintiff. The judge refused so to rule, but ruled that the evidence was sufficient to support the allegations of the bill, and ordered a decree for the plaintiff. The defendants alleged exceptions.

*A. J. Waterman*, for the defendants.

*M. Wilcox*, for the plaintiff.

GRAY, C. J. Upon the case stated in the bill, equity will charge the land purchased in the name of Mrs. Barry with a trust in favor of the plaintiff bank for the amount of $1500 of its money, which had been wrongfully obtained by her son and invested in the purchase of that land. *Bresnihan* v. *Sheehan*, *ante*, 11. *United States* v. *State Bank*, 96 U. S. 30. The demurrer was therefore rightly overruled.

The decision of the presiding judge at the hearing on the merits is not brought up by appeal under the Gen. Sts. *c.* 113, §§ 8, 10, but by bill of exceptions under *c.* 115, § 7. It is not therefore open to revision in matter of fact, and the only question before us is whether, as matter of law, the evidence introduced justified a decree for the plaintiff.

That evidence warranted the judge in inferring that the son, being a minor and living with his parents, received the money from a thief, knowing it to have been stolen from the plaintiff; that neither the son nor his parents appeared to have had any other sufficient means to make the purchase of the land from Girling; and that therefore it must have been purchased with the money of the plaintiff. Upon this state of facts, the plaintiff

was entitled to a decree, subject, of course, to the rights of Girling (whose good faith is not questioned) under the mortgage given back to him for part of the purchase money.

*Decree for the plaintiff accordingly.*