MARY MORIN *vs.* SAMUEL KIRKLAND, executor, & others.

Middlesex.    November 24, 1916. — March 13, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY & CARROLL, JJ.

*Trust,* Resulting.    *Equity Jurisdiction,* To establish resulting trust.

Where a man by falsely and fraudulently representing himself to be unmarried induced a woman to marry him and to entrust to him for their joint use all her earnings, with which he bought real estate in his own name, and where she continued to live with him as his wife, supposing herself to be such, until his death, upon his death the real estate which was purchased in his name with money derived from the earnings of the woman thus falsely induced to believe herself his wife, belongs in equity wholly to her; and, if such supposed husband left a will by which he devised to her one undivided half of his real estate and made her his residuary devisee, by a suit in equity she can establish a resulting trust in the real estate purchased with her earnings and be declared to hold the real estate in her own right discharged of the debts of her supposed husband and of the legacies made by his will.

BILL IN EQUITY, filed in the Superior Court on March 3, 1915, by Mary Morin against the executor of the will of James Kirkland, late of Lowell, and against Mary Kirkland and Samuel W. Kirkland, to establish a resulting trust in a dwelling house and land on the corner of First Street and Read Street in Lowell, which was purchased in the name of James Kirkland with money belonging to the plaintiff as stated in the opinion.

The case was referred to a master, who made the findings that are described in the opinion.  Later the case was heard by *Hamilton,* J., upon the master's report.  He was of opinion that an equitable division of the property in question would be upon the basis pointed out in that part of the master's report in which he found as follows: "I find that the plaintiff is entitled to the same proportion of the First and Read Street property as $3,652.36 bears to $6,702.75, the combined contributions of both."  The judge ordered a decree to be entered in accordance with this view, the plaintiff to have her costs to be taxed as in an action at law.

At the request of the plaintiff and with the consent of the defendants the judge reported the case upon the pleadings and the master's report for determination by this court.  If the order of

the judge was correct, a decree was to be entered as ordered; otherwise, such orders or decrees were to be entered as might be just and reasonable.

The case was submitted on briefs.

*F. A. Fisher,* for the plaintiff.

*W. H. Wilson & C. H. McIntire,* for the defendant Kirkland.

CARROLL, J. The plaintiff on March 8, 1907, married James Kirkland who had falsely represented to her that he was unmarried; the plaintiff, relying upon the statement, supposed it to be true. They lived together in Lowell from that time until his death in July, 1913. Previously, in 1890, Kirkland had married Mary Grady and one of the defendants, Samuel W. Kirkland, is a child of this marriage. This marriage was never annulled, and the wife was living at the time of her husband's death. Until his death, the plaintiff did not know of his former marriage, and she lived with him in the full belief that he was her lawful husband.

At the time of his marriage to the plaintiff they were employed in a mill and continued in this employment until about four months before Kirkland's death when he became ill and left; about two weeks later the plaintiff also left the mill, in order to care for him. From the time of this marriage until his death they maintained a home, and in addition to her labor in the mill she assumed the full management of the house and did all the housework. During this time her wages averaged $10 per week, and he received $11.10 to $18 per week. He paid to her for household expenses each week, for a period of thirteen weeks, $8, and thereafter, as long as he was able to work, $10. These payments were only sufficient for the expenses of the home, and amounted in all to the sum of $2,878.

On the day after the marriage ceremony, the plaintiff paid to Kirkland $700, relying upon his promise to deposit the same in the bank in his name. Of this sum, he deposited $637.36 to the credit of an account standing in his name, which at that time amounted to $162.64. Later, in June, 1908, he withdrew $200 from this deposit.

In February, 1909, a dwelling house was purchased and the title taken in Kirkland's name. The property was subject to a mortgage of $1,800. A cash consideration of $1,032.25 was paid,

$230.65 of which came from a fund contributed to by the wages of the plaintiff and money received by her for the household expenses, and the remainder from the bank deposit standing in the name of Kirkland.

The amount expended in the purchase and maintenance of the real estate and in part payment of the mortgage was $3,615.24. During the time they lived together, the plaintiff mingled her wages with the money received for household expenses, and, after the purchase of the real estate, the money received for rents was added to this fund. It was retained by her for a time and then deposited in the bank in his name. He contributed nothing to it except the weekly payments for household expenses. The sum of $172.39, (his deposit in the bank at the time of the marriage, with interest thereon,) which had been withdrawn at the time of the purchase, was afterward used by him in paying for alterations on the house.

From this fund and the deposit in the savings bank, all the living expenses were paid, as well as the taxes, repairs, and $800 in reduction of the mortgage; also, $260 were drawn by the plaintiff for her clothing, and Kirkland received sums "for the purchase of clothes for himself and his natural son (not the defendant Samuel W. Kirkland) amounting in all to $500."

This natural son made his home with the plaintiff and Kirkland for about eight months each year from February, 1909, to the time of his father's death; and his presence increased the family expenses $400. When Kirkland became ill this fund amounted to several hundred dollars, and all of it was used during his life in payment of the household expenses and the expenses of his illness. The master found that Mary Morin contributed to the fund her wages amounting to $3,015, and the money in the bank amounting to $637.36, making a total of $3,652.36; Kirkland contributed the deposit in the bank, (which had been withdrawn at the time the real estate was purchased and afterwards applied in payment of alterations on the house,) amounting to $172.39, and $2,878, made up of his payments for household expenses, making a total of $3,050.39. The contributions of both, on this basis, equalled $6,702.75.

The master also found that the plaintiff was entitled to the same proportion of the real estate as $3,652.36 bears to $6,702.75.

He made an alternative finding that, if the plaintiff was entitled to the money received from Kirkland for household expenses and support of the family, then the only contribution of Kirkland to the fund was $172.39, and she was entitled to the same proportion of the real estate as $3,652.36 bears to $3,824.75. The judge ordered a decree in accordance with the first finding, and reported the case to this court.

The entire purchase price of the real estate came from the money in the bank and the fund referred to. Although, at the time the plaintiff gave him the $700 to deposit, Kirkland had $162.64 to his credit in the bank, he afterwards withdrew $200; and in February, 1909, when the real estate was bought, this sum had not been returned. In February, 1909, although the bank account was in the name of Kirkland, it was wholly made up of the plaintiff's earnings, and in equity belonged to her. The same is true of the fund from which $230.65 was drawn and used in part payment of the real estate; that also was her money, — for it represented her wages and what was paid to her for household expenses; and, as the expenses consumed all that was given for this purpose, the fund consisted entirely of her contributions from her wages. Therefore the consideration for the purchase of real estate was supplied by Miss Morin alone, no part of it came from Kirkland; and, notwithstanding the legal title stood in his name, the property was purchased solely with her money, and he held the title in trust for her.

All the payments to Kirkland were made because of the fraud practised on her. He represented himself to be unmarried, and relying on this gross fraud, she married him, and lived with him as his wife supposing she was such. The deception continued until his death. It vitiated the entire transaction and was the inducement which led her to give him the money with which the property was bought. *Batty* v. *Greene*, 206 Mass. 561. Whatever form the affair assumed, the money being traced and the fund identified, she alone can claim it, and the real estate in equity is her property. *Hewitt* v. *Hayes*, 205 Mass. 356. *Commonwealth* v. *Moore*, 166 Mass. 513, 515. *National Mahawie Bank* v. *Barry*, 125 Mass. 20. *Bailey* v. *Hemenway*, 147 Mass. 326.

The master found that Kirkland, at some time after the purchase of the house, applied the amount withdrawn from the bank

toward the expense of alteration. This fact does not give rise to an equity in his favor. The plaintiff gave her labor and time in caring for him and his son and in doing the work of the household; during the last four months of his life, her savings, comprising the fund amounting to several hundred dollars, were used in the payment of the expenses of the household and of his illness. During their supposed married life the only sum drawn from the fund by her was $260, while he received therefrom the sum of $500; and each month he retained for his own personal use a part of the rents, amounting in all to $147.

The result is that the real estate was in equity owned by the plaintiff and was held in trust for her. Under the first clause of Kirkland's will Mary Morin received one undivided half of the real estate, — his entire estate consisted of the real estate in question and $27.50 in personal property, — under the fourth clause she is the residuary devisee of all his estate. As the legal title is now vested in her by virtue of this instrument, no reconveyance is necessary; and, as the property belongs to her, she does not hold it subject to his debts or legacies except so far as by the stipulation of the parties certain expenses are to be paid from the rents.

The order for a decree is to be reversed and a decree is to be entered directing that the entire real estate devised to her by the will of Kirkland is to be held by her discharged of his debts and legacies.

*So ordered.*