# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

REUBEN G. ATKINS *vs.* NATHAN K. ATKINS & others.

Essex. February 1, 1932. — March 30, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Trust*, What constitutes.

A widow, who was trustee under the will of her husband for the benefit of herself and two sons, conveyed all the trust property to herself as an individual and mixed it with her own property so that it could not be distinguished or separated therefrom. At the request of one son, she paid premiums on two policies of endowment insurance on his life, each payable to him at the end of the endowment period, and, at his death previous to the end of that period, the first payable to his estate and the second payable to his brother. Eight years later at the mother's request the insured and his brother assigned all rights in the policies to her. Later, she expressed a desire and intention that rights under one policy should be assigned to the insured and under the other to his brother, procured necessary blanks, made the assignment to the insured of the first policy, but, owing to the insured's refusal to execute an assignment of the second policy, was unable to effect the transfer of the second policy to the brother, and died without having done so, leaving a will substantially dividing all her property equally between the brothers. In a petition in equity in a probate court by the brother of the insured against the insured, the executors of the mother's will and the insurance company, to establish a trust in favor of the petitioner in the second policy, the judge found that the assignment to the mother gave her absolute title to the policy, that thereafter no trust therein for either son arose, and that the policy was property of her estate; and the petition was dismissed. *Held*, that

VOL. 279.          1

(1) A finding was justified that the mother did not intend to hold the policies in trust for either of her sons after they had been assigned to· her;

(2) A finding by the judge that the mother did not make any definite agreement with her sons to the effect that "in all matters she would treat her sons equally, and the petitioner's acquiescence in her conversion of the trust funds and use of the principal of the trust was not based upon such an agreement" precluded the petitioner from seeking a completion of an incompleted transfer;

(3) The executors of the will of the mother were entitled to the policy, and the petition properly was dismissed.

PETITION IN EQUITY, filed in the Probate Court for the county of Essex on January 28, 1931, by Reuben, a son of Selina Atkins, against his brother Nathan and the executors of the will of Selina and the Berkshire Life Insurance Company to establish a trust in favor of the petitioner in a policy of endowment insurance issued by the respondent company, numbered 88594 and described in the opinion.

The suit was heard by *Dow,* J., a stenographer having been appointed under statutory provisions. Material facts found by the judge were as follows:

Nathan K. Atkins, husband of Selina Atkins, died, testate, in 1893. By his will he gave his entire estate to her and her brother in trust to pay over the income thereof for her support and maintenance and that of their two children during her life and at her death the principal was given to the children in equal shares. He left two children, Reuben, aged eight, the petitioner, and Nathan, aged five, one of the respondents.

From 1898 and until her death Selina Atkins was the sole trustee. After she became sole trustee, she began to take over the trust property into her individual name and before her death it had all been so taken over. Both Reuben and Nathan knew that she was doing this, and neither made any objection. She told them that she was acting for the best interests of all and that she would see that at her death the property was equally divided between them. No definite agreement was made between her and her sons to the effect that she should have full control of the trust property during her lifetime, and that

in all matters she would treat her sons equally, and the petitioner's acquiescence in her conversion of the trust funds and use of the principal of the trust was not based upon such an agreement. In 1922 she received a legacy of $13,500 under the will of one Morrison. This money was mingled by her with the funds of the trust so that the trust funds cannot be identified. She died July 30, 1930, testate, leaving property in her name, inventoried at $31,913.55; she divided all her estate excepting $2,500 equally between Reuben and Nathan.

In 1913 the respondent Nathan, then twenty-four years of age, was engaged in the business of soliciting insurance. For the effect that it would have upon the insurance company and also upon prospective customers, he wished to take out a policy upon his own life and he asked his mother to allow him to do this and to pay the premiums. She consented to this, and on March 4, 1913, the respondent Berkshire Life Insurance Company issued an endowment policy numbered 88542 for $5,000 upon Nathan's life, maturing in twenty years, payable to Nathan at maturity and, in case of his death before maturity, payable to his estate. The premium was paid by Mrs. Atkins out of funds which belonged to the trust.

When that policy was issued, Mrs. Atkins told Reuben about it and he asked why he couldn't have a policy. Mrs. Atkins told him she would speak to Nathan about it. Nathan then made all the arrangements for a second policy, and on March 11, 1913, a second endowment policy for $5,000 upon the life of Nathan was issued by said Berkshire Life Insurance Company with the consent of Mrs. Atkins, and she paid the premiums from funds belonging to the trust. Said policy is numbered 88594. This policy also matured in twenty years, and was payable to Nathan at maturity, but if Nathan died before maturity, it was payable to the petitioner. The policy contains a reservation to Nathan of the right to revoke the provision making the petitioner beneficiary.

The annual premium on each policy was $239.55.

In 1921 Nathan was planning to go to Mexico and Mrs.

Atkins wished to have both of said policies assigned to her. Nathan assigned to her the first policy numbered 88542 and he and Reuben joined in an assignment to her of the policy numbered 88594. By these assignments Mrs. Atkins became the sole and absolute beneficiary under each policy. "I find there was no agreement between her and Nathan that, upon his return or when he should require it, she would re-assign to him her title in them or in either of them."

Nathan returned in four or five months. Mrs. Atkins continued to pay the premiums upon both policies. There was no evidence that she again spoke to either Reuben or to Nathan in regard to the policies until September, 1929.

While in the office of her attorney in 1921 or 1923, Mrs. Atkins told him that she had taken out two insurance policies in the Berkshire Life Insurance Company, endowment policies of $5,000 each, one for Reuben and one for Nathan, because sometime they would have this money. On September 23, 1929, she and Reuben went to the same attorney's house. She had the two insurance policies with her. She handed the policies to the attorney and said "I want one of these policies to go to Reuben and one belongs to Nathan and I want to make them over to them." She was told by the attorney that he did not know what the company would require and she had better go to the company in Boston. A broker whom she consulted gave her the same advice. Four days later, she and Reuben went to the office of the insurance company in Boston and in the presence of Reuben Mrs. Atkins told the representative of the company that she wanted to have both policies which had been assigned to her assigned so as to make one payable to Nathan and one payable to Reuben. She told him also that the premiums on the policies were paid from the estate. Correspondence and interviews with the agent followed, as a result of which she released policy numbered 88542 from her assignment, and told the agent that she wanted Reuben to have the policy numbered 88594 in any event but if Reuben died she wanted the proceeds to go to her estate. The agent gave her for her signature an

assignment of the policy numbered 88594 by which Reuben would receive the proceeds at maturity and also in case of the prior death of Nathan. When that was received Mrs. Atkins was ill and it did not appear that she ever executed the assignment. Nathan then was in Halifax, and, when he returned the two policies, the duplicate release of policy numbered 88542, and the unexecuted assignment of policy numbered 88594, were delivered to him by Mrs. Atkins for the purpose of having the assignment of the latter policy completed. He claimed both policies as his own and has continued so to claim them. The policy numbered 88594 was not assigned and at her death it still remained in her name as sole beneficiary.

By order of the judge, a final decree was entered reciting that it appeared that by an assignment of said policy made by said Nathan K. Atkins and Reuben G. Atkins dated November 3, 1921, to Selina Atkins the benefits arising under said policy inured solely and absolutely to said Selina Atkins; that thereafter no trust was created affecting said policy or the benefits arising thereunder by any act of said Selina or otherwise in favor of either said Reuben G. Atkins or said Nathan K. Atkins, and that said policy and the benefits arising thereunder constituted a part of the estate of said Selina Atkins and should be held and administered as such by the executors of her will, and ordering that the petition be dismissed. The petitioner and the respondent Nathan, both individually and as executor, appealed.

*G. Newhall*, for the petitioner.

*N. D. A. Clarke*, for the respondent Nathan K. Atkins and another.

*J. C. Batchelder*, for James C. Batchelder, executor, submitted a brief.

CROSBY, J. This is a suit in equity brought in the Probate Court by the petitioner against Nathan K. Atkins, individually, and said Reuben G. Atkins, Nathan K. Atkins and James C. Batchelder as executors of the will of Selina Atkins, and the Berkshire Life Insurance Company, seeking to have declared that a certain endowment insurance policy for $5,000 on the life of said Nathan K. Atkins is charged

with a trust in favor of the petitioner, and to have the policy ordered to be assigned and delivered to him. Two demurrers, filed by Nathan K. Atkins, individually, and as coexecutor, were overruled and appeals were taken to this court. The respondent James C. Batchelder, as a coexecutor, and Nathan K. Atkins severally answered to the merits. The case was heard by the judge of probate who found, in fact, that in 1913 the Berkshire Life Insurance Company issued two endowment policies on the life of the respondent Nathan K. Atkins, the first, numbered 88542, payable in case of his death to his estate, and the second, numbered 88594 — the policy here in question — payable in case of his death to his brother, who is the petitioner; that in 1921 both these policies were assigned to the testatrix, who "became the sole and absolute beneficiary under each policy"; and he ordered that a decree be entered that no trust existed in favor of either Reuben G. Atkins or Nathan K. Atkins in policy numbered 88594, but that it should be held and administered by the executors of the will of Selina Atkins as property belonging to her estate. From this decree the petitioner and Nathan K. Atkins, the principal respondent, appealed. The latter contends that his answer contains a cross bill which seeks to have the insurance policy delivered to him, and that it was error for the judge not to order a decree to that effect. The evidence before the judge of probate is reported under G. L. c. 215, § 18, as amended by St. 1923, c. 392, and St. 1924, c. 194, § 1.

Nathan K. Atkins further contends that there was error in the trial judge's refusal to rule that "This court has power in this proceeding to decree that the executors of decedent's estate hold the policy numbered 88594 referred to in the petition, in trust for the exclusive benefit of respondent Nathan K. Atkins and to order said policy to be assigned by said executors to him"; and that there was error in the admission of certain evidence. The petitioner contends, in substance, that there was a trust relationship in the whole transaction; that since the decedent was trustee of the estate of her husband for the benefit of herself and for her

two sons equally, and as the premiums on the policy were paid at least in part out of said trust property, the policy is held subject to the same trust.

The judge found that after the decedent became sole trustee under her husband's will she began to take over the trust property into her individual name; that before her death it had all been so taken over and mingled with money which belonged to her individually, and that it could not be distinguished or separated therefrom. In these circumstances it is manifest that the trust came to an end. *Little* v. *Chadwick,* 151 Mass. 109. In the case last cited a trustee mingled trust assets with his own, used them all in his business, and subsequently failed and made an assignment for the benefit of his creditors. It was held that none of his property was affected with a trust, and that the beneficiary could only come in and share in the proceeds thereof with the creditors. In that case it was said, at page 110, that "When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases." To the same effect see also *Lowe* v. *Jones,* 192 Mass. 94, 100; *Hewitt* v. *Hayes,* 205 Mass. 356; *Patterson* v. *Pendexter,* 259 Mass. 490, 493, 494, and cases collected.

Whether or not there was any trust in the money held by Mrs. Atkins as trustee before either of the policies was issued, it cannot rightly be held in view of the circumstances that there is a trust in favor of the petitioner in the policy in question. If the policies were ever impressed with a trust, each was impressed with a trust in favor of both sons. But when both policies were assigned to Mrs. Atkins in 1921 the trust was extinguished and she then held the entire ownership in them. The judge found that there was no agreement with Nathan that when he should require it she would reassign the policy to him or her title in either policy. Even if it be assumed that the trust survived, there was no trust in one policy for the benefit of Nathan and in the other for the benefit of Reuben, but both sons were entitled to share equally in the proceeds of each policy. The assignment of

one of the policies back to Nathan did not affect the trust, and Reuben would still be entitled as *cestui que trust* to his interest in both policies, but he would not be entitled to the whole beneficial interest in either. Since he will receive the beneficial interest now standing in the name of Mrs. Atkins, and since he does not ask for any relief respecting the other policy, he is not entitled to the relief which he seeks. Whether or not Mrs. Atkins obtained the entire ownership and beneficial interest in both policies by the assignments to her in 1921, this petitioner is not entitled to relief on account of the original trust relationship. He contends that the trust in the policy numbered 88594 in his favor was expressly declared. There is no doubt that a trust in personal property may be orally declared. *Taft* v. *Stow*, 167 Mass. 363. *Chace* v. *Gardner*, 228 Mass. 533. *Bradford* v. *Eastman*, 229 Mass. 499, 501. *Druker* v. *Druker*, 268 Mass. 334, 339. Nor is any particular form of words necessary. *Bailey* v. *Wood*, 211 Mass. 37, 42. *Packard* v. *Old Colony Railroad*, 168 Mass. 92, 96. But the words used must unequivocally show an intention that the legal estate was vested in one person, but to be held in some manner or for some purpose on behalf of another. *Peck* v. *Scofield*, 186 Mass. 108, 111.

There is no evidence which requires a finding that there was such an intention on the part of Mrs. Atkins. There was evidence that she referred to the policies as "Reuben's and Nathan's policies." It does not appear from such reference whether they were entitled to the beneficial interest therein or merely that they were payable to Reuben and Nathan respectively in different eventualities. As she requested that the policies should be transferred to her it could warrantably have been found that during the time Nathan was in Mexico she did not intend that any one should have the beneficial interest in the policies except herself. A finding would be justified that she did not intend to hold the policies in trust for either of her sons after they had been assigned to her in 1921.

If we assume, without deciding, that the answer of Nathan constituted a cross bill, the finding of the judge that there

was no agreement by Mrs. Atkins to transfer the policies to him on his return from Mexico disposes of his contention, and his appeal cannot be sustained.

The petitioner cannot rely on the equitable doctrine which may be sometimes invoked because of incompleted transfers, since it is found that Mrs. Atkins did not make any definite agreement with her sons to the effect that "in all matters she would treat her sons equally, and the petitioner's acquiescence in her conversion of the trust funds and use of the principal of the trust was not based upon such an agreement." Accordingly the petitioner is not entitled to invoke this equitable doctrine. *Stone* v. *Hackett,* 12 Gray, 227. *Herbert* v. *Simson,* 220 Mass. 480. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309, 312. *Young* v. *Young,* 80 N. Y. 422.

The evidence would not justify a finding that Reuben, because the first policy was assigned to Nathan by his mother, is entitled to an assignment of the other policy to him.

We find no reversible error in the rulings relating to evidence, or in the rulings granted or refused.

It results that by the assignment of the policies to Selina Atkins by the petitioner and by the principal respondent transferring to her all their interests therein, the policy in question upon her death passed to the executors of her estate. If she intended to transfer that policy to Reuben, such intention never was carried into effect. It follows that it became an asset of her estate.

*Decree affirmed.*