WORCESTER BANK & TRUST COMPANY, trustee, *vs.* ROBERT A. NORDBLOM & others, trustees, & another.

Worcester.    November 9, 1933. — December 28, 1933.

Present: CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Trust,* What constitutes, Construction of instrument creating trust, Tracing of assets. *Trust Company,* In possession of conservator, Deposit of trust funds in commercial department. *Bank and Banking. Words,* "Banking department."

A mortgage indenture to a trust company as trustee for holders of bonds of the mortgagor provided that the mortgagor should make certain payments to the trustee as a sinking fund, to be held by it as agent of the mortgagor and not as security for the bonds; and that the trustee might deposit such payments, "as a special fund or funds," in "its own banking department," in which event it should "allow" the current rate of interest upon the deposit. The indenture contained provisions respecting the trust company's trust department. It had no savings department. It deposited sinking fund payments in its commercial department to the credit of itself as trustee. Subsequently, under §§ 83–89, added to G. L. (Ter. Ed.) c. 172 by St. 1933, c. 87, § 1, a conservator of it was appointed. *Held,* that

(1) The reference in the indenture to the trust company's "banking department" meant its commercial department in the circumstances; and the deposit of the sinking fund payments in that department was rightful;

(2) For such deposit the trust company became a mere debtor, and was entitled to mingle the deposit with other deposits in the commercial department and to use the money;

(3) The provision in the indenture that such deposit should be "as a special fund or funds," when read in connection with the provision as to interest, meant only that the deposit should not be of a mixed fund and did not mean that the trust company should not have the right to use the deposit;

(4) It could not be assumed that such deposit remained in existence intact among the other assets which the commercial department had at the time of the conservatorship;

(5) The mortgagor was not entitled to payment of such deposit in full in priority to the other depositors in the commercial department on the ground that such deposit was a trust asset which he as beneficiary of the trust could trace;

(6) Such deposit having been made in the commercial department rightfully even though the trust company was a fiduciary, the mortgagor was not entitled to any statutory preference with respect thereto;

(7) Such deposit was not entitled to any priority or preference over the other deposits in the commercial department.

BILL IN EQUITY for instructions, filed in the Supreme Judicial Court for the county of Worcester on September 7, 1933, described in the opinion.

The suit was reserved and reported by *Lummus,* J., for determination by the full court.

*B. B. Gilman,* stated the case.

*C. B. Rugg,* (*C. H. Smith* with him,) for the defendant Worcester Bank & Trust Company.

*R. H. Davison,* (*L. L. Wadsworth, Jr.,* with him,) for the defendants Nordblom and others, trustees.

LUMMUS, J.   The plaintiff is a Massachusetts trust company, in the possession of a conservator under §§ 83–89, added to G. L. (Ter. Ed.) c. 172 by St. 1933, c. 87, § 1. The trustees of the Worcester Investment Trust, hereinafter called the defendants, owning the Worcester Building in Worcester, gave a mortgage thereon in 1923 to the plaintiff as trustee for bondholders to secure an issue of bonds of $800,000. The mortgage indenture provided that twice a year the defendants should make specified payments into a sinking fund to be held by the plaintiff as trustee, to be used from time to time to retire bonds.

The conduct of the plaintiff as trustee of the sinking fund

was regulated by the second, third and fourth paragraphs of art. 2, § 2, of the mortgage indenture, which read as follows: "The Trustee shall deposit, as a special fund or funds any and all sums, including payments into the Sinking Fund, which may be at any time received by it under any of the terms or provisions of this Indenture, in such bank, banks or trust companies, including its own banking department, as it may in its reasonable discretion select. The Trustee shall account for all interest actually received by it upon deposits made by it in other banks or trust companies, as stated above, and shall allow interest upon all deposits made, as above stated, in its own banking department, at such current rates as are then allowed in the City of Worcester on similar deposits; but, except as above stated, the Trustee shall not be bound to account for or pay any interest upon payments made to it hereunder, and it shall not incur any liability except for the amounts actually deposited with and received by it. All funds, whether sums paid into the Sinking Fund or otherwise, at any time paid to or deposited with the Trustee or held by it under any of the provisions of this Indenture, shall be held by the Trustee as agent for the Grantors, hereby irrevocably appointed, to be used by it in accordance with the terms of this Indenture and in accordance with law, and no such funds shall be security for the bonds secured by this Mortgage or Deed of Trust."

The bill, the truth of which is admitted by the answers, shows that the plaintiff as trustee under the mortgage indenture received for the sinking fund various payments which it deposited in an account in its own commercial department, designated as "Worcester Bank & Trust Company, Trustee, Worcester Investment Trust, Sinking Fund." The plaintiff allowed interest thereon at the current rate paid in the city of Worcester on similar deposits. The amount on deposit in that sinking fund account on March 4, 1933, was $29,055.92. During the entire period of the receipt by the plaintiff of sinking fund and other payments from the defendants, up to the time of the segregation of the amount in question hereinafter described, the cash available for the payment of deposits in the commercial department never fell below the

total amount of such sinking fund and other payments deposited by the plaintiff in that department. The plaintiff always maintained a trust department, and all sinking fund and other payments received by the plaintiff as trustee were entered on the books of the trust department before being deposited in the commercial department. The entire record, including the plan of reorganization hereinafter described, is silent as to the existence of any savings department, and it may fairly be inferred that there was none.

After the financial difficulties of the plaintiff had caused the appointment of a conservator, a plan of reorganization of the plaintiff was prepared and was declared effective by the commissioner of banks on June 9, 1933. Under that plan the assets of the commercial department have, for the most part, been conveyed to a national bank, which has agreed to allow the depositors in the commercial department the right at present to draw checks up to a certain fractional part of their deposits, with a right to share in further liquidation later. But the plaintiff retained and segregated in the hands of its conservator the sum of $29,055.92, which was the amount of the sinking fund deposit, pending the determination of the question whether the defendants are entitled to payment of that sum in full, in priority to other depositors in the commercial department. This bill for instructions is brought to determine that question.

Apart from statute, in the distribution of the assets of an insolvent or deceased trustee, a claim based on the duty of the trustee or its breach is entitled to no priority because of its origin. Inherently a claim upon a grocery bill or a promissory note ranks as high. *Attorney General* v. *Brigham*, 142 Mass. 248. *Little* v. *Chadwick*, 151 Mass. 109. It is only where some of the assets can be shown to be a part of the trust estate, or the product of the conversion of specific funds or property of the trust estate into another form, that the trust estate can obtain an advantage over the creditors generally. That advantage is not a right to priority or preference, but rather a right to reclaim assets of the trust estate that can be traced and found. *Bresnihan* v. *Sheehan*, 125 Mass. 11. *Lowe* v. *Jones*, 192 Mass.

94. *Morin* v. *Kirkland,* 226 Mass. 345. *Peoples National Bank* v. *Mulholland,* 228 Mass. 152. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 337. *Salem Elevator Works, Inc.* v. *Commissioner of Banks,* 252 Mass. 366. *Downing* v. *Cunningham,* 256 Mass. 285. *Atkins* v. *Atkins,* 279 Mass. 1. In tracing the trust funds, however, the trust estate is aided by a presumption that a trustee, drawing upon a deposit in which his private funds and trust funds are mingled, intends to draw first his private funds which he has a right to use, leaving the trust fund intact as far as the amount remaining permits. *Hewitt* v. *Hayes,* 205 Mass. 356, 361. *Supreme Lodge of the Portuguese Fraternity of the United States* v. *Liberty Trust Co.* 215 Mass. 27. *Moore* v. *O'Hare,* 224 Mass. 283. *Moore* v. *Mansfield,* 248 Mass. 210. *Patterson* v. *Pendexter,* 259 Mass. 490, 494. This is "a fiction established by equity in order to work out justice." *Yesner* v. *Commissioner of Banks,* 252 Mass. 358, 361. *Downing* v. *Cunningham,* 256 Mass. 285, 288. 82 Am. L. R. 46.

Essential to this fiction is the presumption that the trustee intends to do right and not wrong. In the present case there was no wrong in depositing the sinking fund in the commercial department, for that was authorized by the mortgage indenture, which permitted the plaintiff to deposit in "its own banking department." Since the mortgage indenture dealt for the most part with duties imposed on the trust department, the reference to the "banking department" apparently was to some department other than the trust department. The requirement that the plaintiff "allow interest upon all deposits made . . . in its own banking department," indicates that the "banking department" intended was one receiving deposits and paying interest as a debtor for the use of the money deposited. *Old Colony Trust Co.* v. *Puritan Motors Corp.* 244 Mass. 259, 264. Compare *Commonwealth* v. *Snow,* 284 Mass. 426. In practice, trust departments of Massachusetts trust companies do not receive deposits of that sort, even if the statutes authorize them to do so. See G. L. (Ter. Ed.) c. 172, §§ 49–59. The words quoted cannot refer

to a savings department, for there was none. By elimination, it becomes clear that they must mean the commercial department. Upon the authorized deposit in that department, the plaintiff became a mere debtor for the money deposited, and entitled to pour it into the general funds of that department. See *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.* 242 Mass. 181, 185; *Central Trust Co. of Illinois* v. *Hanover Trust Co.* 242 Mass. 265. The restriction that the deposit shall be "as a special fund or funds," when read in connection with the provision for interest, means only that the deposit shall not be of a mixed fund, and does not mean that the plaintiff shall lack the right enjoyed by other depositaries of having the use of the money upon which it is to pay interest.

True, the plaintiff is a single institution. It may be hard to discover a promisee other than the plaintiff itself who could bring an action at law to recover the amount of the deposit. But technical difficulties of that sort do not alter the decisive fact that the plaintiff, after rightfully depositing the sinking fund in its commercial department, rightfully used the money deposited. It became indistinguishable in fact from other assets of the commercial department. Since the whole foundation of the fiction fails because the transfer and use of the money were rightful, the sinking fund cannot be assumed to exist intact among the remaining assets of the commercial department. So far as the case of the defendants rests upon the theory of following trust funds, it must fail.

But the defendants claim statutory rights. In *Morrison* v. *Lawrence Trust Co.* 283 Mass. 236, the defendant trust company was guardian of a minor under G. L. (Ter. Ed.) c. 172, § 52, and was bound to keep separate the money and property received in that capacity. G. L. (Ter. Ed.) c. 172, §§ 53, 54. Instead, it deposited, in its name as guardian, money of the ward in its own commercial department, where the money naturally became mingled with its general assets. The right of the minor to full replacement out of the commercial department, thus diminishing the dividends to depositors in that department, was rested by

the court upon statutory provisions giving *cestuis que trust* in the trust department and depositors in the savings department of a trust company certain paramount rights which tend to reduce the dividends which otherwise might be paid to depositors in the commercial department. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 478. *Commissioner of Banks in re Cosmopolitan Trust Co.* 241 Mass. 346. *Commissioner of Banks in re Hanover Trust Co.* 242 Mass. 343. *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64. *Goldband* v. *Commissioner of Banks,* 245 Mass. 143, 151. *Cosmopolitan Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14. *Rossi Bros. Inc.* v. *Commissioner of Banks,* 283 Mass. 114, 118. *Baldwin* v. *Commissioner of Banks,* 283 Mass. 423. 81 Am. L. R. 1479, 1508. In the present case, the sinking fund was not wrongfully abstracted from the trust department and deposited in the commercial department, but the transfer was rightful. When it had been accomplished, the sinking fund was an ordinary deposit of the commercial department, and all right to statutory preferential treatment was at an end.

The plaintiff is instructed that the sinking fund deposit of $29,055.92 is not entitled to priority or preference over the claims of other depositors in the commercial department.

*Ordered accordingly.*