·ANTHONY FARINHA *vs.* COMMISSIONER OF BANKS.

Essex.    February 6, 1939. — May 23, 1939.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Trust,* Tracing of assets. *Bank and Banking. Trust Company,* In liquidation.

A depositor in a trust company who, upon demanding payment of his deposit and having bills of a certain denomination exhibited to him for delivery, was persuaded by the company's officer to leave them with the company for delivery later on demand, could not reclaim the money from the commissioner of banks, who before the depositor's return for the money had taken possession of the company, without proving that the bills or a substituted property at all times had remained with the bank and had passed into the possession of the commissioner.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on September 6, 1932, and afterwards amended.

The suit was heard by *Lummus,* J.

*C. Evans,* for the plaintiff.

*L. M. Harlow, D. De C. Donovan, & F. J. Muldoon,* for the defendant, submitted a brief.

DOLAN, J.    This suit in equity was referred to a master by a single justice of this court. Upon the coming in of the master's report, an interlocutory decree was entered confirming the report and a final decree was entered dismissing the bill of complaint. The case now comes before us on the plaintiff's appeal from the final decree.

The findings of the master are substantially as follows. The defendant Salem Trust Company, hereinafter called the bank, was taken possession of by the commissioner of banks, hereinafter referred to as the commissioner, on December 15, 1931. The plaintiff, of foreign birth, has been in this country since 1892. While able to sign his name he reads and speaks English with some difficulty. On June 15, 1931, he deposited $16,000, which he had withdrawn from savings banks, in the bank. In making this deposit he dealt with one Fischer, assistant secretary, treasurer, vice-president and a director of the bank, who was authorized to act in its behalf in the matter. The plaintiff at that time made it clear to Fischer that he would require payment of the sum deposited in the near future and that it should be available to him in cash, in bills of the denomination of $1,000. As a result he received from the bank a "time certificate of deposit" reciting that the sum involved was payable to his order upon thirty days' notice. By error the certificate failed to state that interest was to be payable at the rate of four per cent per annum. Though the plaintiff "did not grasp every technical detail of . . . [this] transaction" he understood in a general way what his rights were under the certificate. He knew that his deposit was not in the savings department of the bank, and was satisfied with the arrangement as completed.

On October 1, 1931, the plaintiff formally notified the bank of his intention to require payment of his deposit in thirty days. On October 30, 1931, he had a conference with Fischer and one Deery, the president of the bank, at which they made efforts to persuade him to leave his deposit in the bank, drawing upon it at need, or to accept the check of the bank in lieu of cash. These efforts failed, but they did persuade the plaintiff that $500 bills would be easier to negotiate than $1,000 bills. In consequence, he agreed to return to the bank on November 4, 1931, at which time, he was promised, his money would be paid to him. Upon his return to the bank on that day Fischer showed him a package of $500 bills and said, "I want to show you that we have your money here for you." In fact the package

contained only $8,000, but the plaintiff believed that it contained the total amount of his deposit, and did not count the bills displayed. At the suggestion of Fischer he agreed to leave the money with the bank for a short time, upon the understanding that it was to be held for payment to him on demand. He stipulated that this must be the agreement else he would take the money away with him at once. He believed, and it was intended by Fischer that he should understand, that his previous arrangement with the bank was at an end, and that his deposit was thereafter to be payable to him on demand in $500 bills. Fischer thereupon returned the bills that had been exhibited to the plaintiff to the vaults of the bank for its general use. The plaintiff retained the certificate, which he then regarded only as a receipt for the money he originally deposited. When the plaintiff called again at the bank for his money, the commissioner was in possession.

Under the allegation of the plaintiff's bill as filed, his contention was that he had been fraudulently led to believe that his deposit of June 15, 1931, had been received in the savings department of the bank, and he sought to have the commissioner ordered to accept his proof of claim as a savings depositor. In its amended form the bill alleges that, at the time of the deposit, Fischer knew that the bank was hopelessly insolvent, and the plaintiff seeks to be declared entitled to payment of the full amount of his deposit on that ground. See *Steele* v. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 394, 397. There is no mention in the original or amended bill of the plaintiff's negotiations with the officers of the bank in October and November, 1931. The findings of the master do not support the allegations of the original bill, and are inconsistent with the allegations of the amended bill, since he found that the plaintiff understood at the time his deposit was made that it was not in the savings department of the bank; and that as late as November, 1931, the officers of the bank "entertained a genuine hope and expectation that in the last analysis they would be enabled through the happening of certain events to raise the respondent

bank from the financial slough in which it was mired."
It is not established by the findings of the master that the
bank accepted the deposit knowing, through its officers,
that it would not and could not pay the money when it
should be demanded by the plaintiff. *Steele* v. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 394,
397, and cases cited. *Commissioner of Banks* v. *Pitocchelli,*
276 Mass. 201, 205.

The evidence is not reported. The findings just referred
to are not inconsistent with the subsidiary facts found by
the master, and may have been based on evidence that the
master may have received, but which was not before the
single justice and is not before us. Hence they must stand.
*Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431.

Having relied on the circumstances surrounding the
making of the deposit in question on June 15, 1931, the
plaintiff cannot, as of right, have relief upon the basis of
the findings made by the master relative to the entirely
different transactions which took place several months
later. A decree in favor of the plaintiff upon the pleadings
as constituted would have been error. *Donohue* v. *White,*
247 Mass. 479, 482. *Gamwell* v. *Bigley,* 253 Mass. 378.
*Thayer* v. *Atwood,* 259 Mass. 523, 527. *National Rockland
Bank of Boston* v. *Johnston,* 299 Mass. 156. The case,
however, has been argued before us upon the findings of
the master concerning the transactions between the plaintiff and the officers of the bank which took place in October
and November, 1931. Although this court could remand
the case for the allowance of an amendment of the pleadings to conform to the proof of issues which were fully
tried before the master, G. L. (Ter. Ed.) c. 231, §§ 51,
125, 144; *Ciarlo* v. *Ciarlo,* 244 Mass. 453, 456; *Bourbeau*
v. *Whittaker,* 265 Mass. 396, 399; *Westfield Savings Bank*
v. *Leahey,* 291 Mass. 473, 476, such action in the present
case would not avail the plaintiff because the dismissal
of his bill was justified upon the merits of the claim he
now urges.

If we assume in the plaintiff's favor that on November
4, 1931, the plaintiff became a special depositor of the

bank and that funds of his in some amount then were held in trust for him, it is essential to the relief he now seeks that he trace all or some of the trust *res* into the hands of the commissioner. *Salem Elevator Works, Inc.* v. *Commissioner of Banks,* 252 Mass. 366, 372. "It is only where some of the assets can be shown to be a part of the trust estate, or the product of the conversion of specific funds or property of the trust estate into another form, that the trust estate can obtain an advantage over the creditors generally. That advantage is not a right to priority or preference, but rather a right to reclaim assets of the trust estate that can be traced and found. . . . In tracing the trust funds, however, the trust estate is aided by a presumption that a trustee, drawing upon a deposit in which his private funds and trust funds are mingled, intends to draw first his private funds which he has a right to use, leaving the trust fund intact as far as the amount remaining permits. . . . This is 'a fiction established by equity in order to work out justice.' *Yesner* v. *Commissioner of Banks,* 252 Mass. 358, 361." *Worcester Bank & Trust Co.* v. *Nordblom,* 285 Mass. 22, 25, 26. *Blumenfeld* v. *Union National Bank of Beloit,* 38 Fed. (2d) 455, 456.

There is nothing, however, in the master's report to show that the plaintiff's special deposit or trust fund remained in the bank up to December 15, 1931, at which date the commissioner took possession of the bank. It is not to be inferred from the findings that when the commissioner took possession there was cash on hand in the commercial department in the sum of $6,167.92, that there was due from other banks about $68,000, and that on December 16, 1931, by virtue of a payment from one of these banks the commissioner had on hand cash in excess of $32,000, that in the interim all of the funds of the bank had not been disbursed. "If a trust fund is wholly depleted at any time, it cannot be treated as reappearing in subsequent accumulations, and a claimant of a trust fund has the burden of identifying it." *Blumenfeld* v. *Union National Bank of Beloit,* 38 Fed. (2d) 455, 457. For all that appears all the moneys of the bank including the trust fund may have been

disbursed during the period here involved.   The burden was on the plaintiff to establish his title, and this called for proof that the trust fund or some part of it "at all times after it was received by the bank was kept by it in cash or substituted property and no wise dissipated.   Otherwise, it did not pass to the . . . [commissioner], and it cannot be regained in a suit brought against him."   *Blumenfeld* v. *Union National Bank of Beloit,* 38 Fed. (2d) 455, 456.   Since the plaintiff has failed to sustain this burden, his rights are only those of a general creditor, which we assume is admitted.   *Hecker–Jones–Jewell Milling Co.* v. *Cosmopolitan Trust Co.* 242 Mass. 181, 187, 188.   *Worcester Bank & Trust Co.* v. *Nordblom,* 285 Mass. 22, 25.   *Schuyler* v. *Littlefield,* 232 U. S. 707, 710.   *Hoffman* v. *Rauch,* 300 U. S. 255.   *Bank Commissioners* v. *Security Trust Co.* 70 N. H. 536, 550.   *Blumenfeld* v. *Union National Bank of Beloit,* 38 Fed. (2d) 455, 456, 457.

*Final decree affirmed.*