GOODSPEED'S BOOK SHOP, INC. *vs.* STATE STREET BANK
AND TRUST COMPANY, trustee, & another;[1]
SOTHEBY PARKE BERNET & Co., intervener
(and a companion case[2]).

Suffolk.   April 9, 1979. — July 20, 1979.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Trustee Process.*

Where an auction house had paid an individual by check an advance
   against goods which were subsequently found to be stolen, and the
   proceeds of the check were identified, the auction house had an
   equitable lien on the proceeds, and thus the proceeds could not be
   attached by trustee process in actions brought by the individual's
   creditors. [149-150]

TWO CIVIL ACTIONS commenced in the Superior Court
on May 6, 1977.

The cases were heard by *Beaudreau*, J.

*Stephen Gordet* for Sotheby Parke Bernet & Co., inter-
vener.

*Francis H. Fox* for the plaintiffs.

DREBEN, J. These appeals involve the question who
among three defrauded parties is entitled to the proceeds
of a check.

There appears to be no dispute as to the facts, and they
are taken from the complaints of the plaintiffs and the
intervener and from the answer of the trustee. See
*Musolino, LoConte Co. v. Costa*, 304 Mass. 253, 255-256
(1939).

---

[1] Michael R. Moskaluk.

[2] The First National Bank of Boston *vs.* Michael R. Moskaluk &
another, trustee; Sotheby Parke Bernet & Co., intervener.

In 1975 one Moskaluk fraudulently obtained $7,000 in cash from The First National Bank of Boston (First National) through manipulations involving checks which he deposited for collection knowing that payment on such checks had been stopped. In early 1977 the same Moskaluk sold to Goodspeed's Book Store, Inc. (Goodspeed's), thirty-nine Audubon prints for $10,000, warranting they were owned by him when, in fact, they had been stolen. In March, 1977, he delivered to Sotheby Parke Bernet & Co. (Sotheby) in London seventy-five other Audubon prints for inspection and possible sale. These prints, too, had been stolen. Relying on Moskaluk's representations, Sotheby entered into a written agreement with him and gave him the check which has caused the present controversy.

The check was for twelve thousand British pounds and was given as advance against the future sale of the prints. It was drawn on the National Westminster Bank Ltd. (Westminster) and was deposited for collection by Moskaluk in the State Street Bank and Trust Company (State Street) on April 26, 1977. State Street forwarded the check to Westminster, requesting that it credit the proceeds to State Street's account at State Street's correspondent bank in England under direct telex advice to State Street in Boston. The proceeds were credited to State Street's account in its English correspondent bank on April 29, 1977.

Apparently as a result of an F.B.I. investigation, suspicion as to the ownership of the prints arose, and Sotheby and State Street agreed on May 4[3] by telephone that, pending the F.B.I. investigation, State Street would hold the proceeds of the check and Sotheby would hold the prints. This agreement was confirmed by telex on May 6.

On the same date, May 6, First National and Goodspeed's brought separate actions against Moskaluk and served State Street as trustee in order to attach by trust-

---

[3] Unless otherwise specified, all dates mentioned hereafter refer to the year 1977.

ee process the assets of Moskaluk. State Street filed its answer in each action, and Sotheby was allowed to intervene. Default judgments were entered against Moskaluk in favor of the plaintiffs First National and Goodspeed's and in favor of the intervener, Sotheby. Each plaintiff moved to charge the trustee; Sotheby moved to discharge the trustee and for an order of payment to it. The plaintiffs' motions were granted, Sotheby's were denied, and jugments were entered charging the trustee in the amount of $7,000 for First National and $10,000 for Goodspeed's.[4] We reverse both judgments.

Trustee process is a statutory procedure under G. L. c. 246 which enables a creditor to attach goods or credits of his debtor which are in the hands of a third person. *Van Camp Hardware & Iron Co.* v. *Plimpton*, 174 Mass. 208, 209-210 (1899). To be attached the goods or credits have to be due to the defendant absolutely and without contingency. G. L. c. 246, § 24. If a third person claims such goods or credits, as did Sotheby here, he is permitted to intervene as a claimant "in order to determine his title" to them. G. L. c. 246, § 33. The claimant may assert either legal or equitable rights to the goods or credits in the possession of the trustee, and if he shows that such goods or credits belong to him or that he has an equitable interest in them, he can hold them against an attaching creditor. *Meteor Prod. Co.* v. *Société D'Electro-Chemie et D'Electro-Métallurgie,* 263 Mass. 543, 548 (1928). *R.H. White Co.* v. *Lees,* 267 Mass. 112, 115 (1929). *Levin* v. *Lerner,* 290 Mass. 294, 298 (1935). *Georgeopoulos* v. *Georgeopoulos,* 303 Mass. 231, 233 (1939). This is so because, in the absence (as here) of any applicable recording statute, an attaching creditor has no better footing than his

[4] In his memorandum of decision the judge, based on State Street's answer, held that on the date the trustee was served, State Street had in its possession and control the proceeds of Sotheby's check which were due Moskaluk without contingency. He also held that the "contingency" created by Sotheby and State Street on May 4 was a gratuitous undertaking.

debtor. *Thaxter* v. *Foster*, 153 Mass. 151, 153 (1891). See *In re Jeandros Dye & Print Works, Inc.*, 22 F. Supp. 26, 30, 32 (D. Mass. 1938).

Sotheby, as intervener, first argues that the court below erred in charging State Street as trustee because there was no final settlement of the check and there was no credit due Moskaluk without contingency under G. L. c. 246, § 24, at the time of service of the trustee. The plaintiffs argue the contrary. However, we do not need to decide the questions underlying that dispute[5] because even if the plaintiffs were to prevail on that issue, the trustee cannot be charged. We will assume, therefore, that final settlement of the check occurred prior to May 6, 1977, that State Street owed funds to Moskaluk and that "[i]t could properly be charged as trustee, unless a title to the funds superior to that of the debtor [Moskaluk] should be established." *R.H. White Co.* v. *Lees*, 267 Mass. at 115.

Sotheby argues that it has such superior claims. We agree. Moskaluk acquired Sotheby's check as an advance on goods which were stolen, and the proceeds of the check were identified. Sotheby has, therefore, an equitable lien on such proceeds. *National Mahaiwe Bank* v. *Barry*, 125 Mass. 20, 24-25 (1878). *Morin* v. *Kirkland*, 226 Mass. 345, 348 (1917). See *Thaxter* v. *Foster*, 153 Mass. at 153-154.

The judgments are reversed and the actions remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[5] We do not, therefore, discuss the implications of G. L. c. 106, § 4-213 (4)(*a*), or of § 4-103(1), or the effect, if any, of the agreement of May 4, 1977, between State Street and Sotheby.